413 P.2d 788

**STATE of Arizona, Appellee,**

v.

**Tony VALENZUELA, Appellant.**

**No. 1 CA–CR 43.**

Court of Appeals of Arizona.

April 28, 1966.

Rehearing Denied May 27, 1966.

Review Denied June 21, 1966.

Darrell F. Smith, Atty. Gen., by Gary K. Nelson, Asst. Atty. Gen., for appellee.

Tupper, Skeens, Rapp & Morris, by Edward Crehan Rapp, Phoenix, for appellant.

STEVENS, Chief Judge.

Tony Valenzuela was charged in a two count information, one count charging the illegal possession of heroin and the other count charging the illegal possession of marijuana. He was tried by the court sitting without a jury, adjudged guilty of both counts and on each count was sentenced to serve not less than two years and not more than two years and one month, the sentences to run concurrently. He was released on bond pending appeal. The issues presented to this Court are basically procedural.

Mr. Rapp was requested to represent the defendant at the preliminary hearing, he was thereafter appointed to represent him at the trial and he was again appointed to represent him on this appeal. Mr. Rapp has adequately preserved all objections and there is no issue before us relative to the procedures whereby the predicate for the matters presented to us was established in the trial court.

On 16 December 1964 a member of the police department of the City of Phoenix secured the issuance of a search warrant which was regular on its face, no

issue being raised as to the recitations contained in the warrant. Approximately nine o'clock in the morning of the day on which the warrant was issued, the officer who secured the same, together with three additional members of the police department, one of whom was a Sergeant of Police, proceeded to the place of the residence of the defendant, being the address specified in the warrant. Some time later the officers learned that the apartment was in fact the apartment of a woman who resided there and with whom the defendant was then living. The police officers were dressed as workmen, wearing no outward identification as police officers. They used motor vehicles, ordinary in appearance, which did not bear any police markings. Two of the officers went to the front door and the others stationed themselves in the vicinity. At this point there was a double door, that is to say a screen door which was locked and an inside main door. They had the search warrant in their possession. They knocked on the door and the woman who had returned home from her 11:00 p. m. to 7:00 a. m. employment but a short time before, answered the door in a robe, opening the inside door but slightly. One of the police officers informed her that they were workmen, that they had seen the landlord and that they wished to enter for the purpose of checking and repairing some electrical wiring. These statements had no basis in fact. They did not then disclose their true identity or their true purpose. On cross examination, one of the officers admitted that they sought entrance by a ruse. The woman did not admit them and there is a conflict in the evidence as to whether the door was then closed by her in a normal manner or was slammed shut. There was a conflict as to whether the police officers shouted advice to the woman that they were police officers and had a search warrant. There was a conflict as to whether this advice was given before or after the woman had closed the door. Under all the evidence, but a short interval elapsed between the closing of the door and the application of force by the officers re-

sulting in the opening of the screen door and the kicking in of the main door. The officers then entered the apartment. At the conclusion of the evidence, the trial judge stated for the record:

> "And since it further developed that the officers did announce, and the Court so finds, in a loud voice after the door was closed that they were armed with a Search Warrant and were police officers, the Court feels that they were entitled to use the necessary force to effect entry into the premises."

There is no real conflict in the evidence relative to the fact that the defendant was in the dwelling and was given a copy of the search warrant. It is also established that he showed the officers where some of the narcotics were stored. This he did after some minutes of unsuccessful search of the premises by the officers. It is urged by counsel that the defendant's statements were not voluntary. This matter was expressly resolved by the trial judge as follows:

> "I resolve it to the effect that I wish at this time for the record to show that the Court finds that the admissions made by the defendant, Tony Valenzuela, were of a voluntary nature, and that the motion to suppress for the reasons I have indicated is denied."

This Court finds no basis to disagree with the trial court's finding. It is our opinion that if the evidence which was seized was admissible, then the judgment of guilt should be affirmed.

■ The defendant urges that the affidavit submitted in support of the issuance of the search warrant even when supplemented by the police officer's additional verbal information to the magistrate who issued the search warrant, was not sufficient to show probable cause for its issuance. Applying the test outlined by Division Two of this Court in the case of State v. McMann, 3 Ariz.App. 111, 412 P.2d 286, decided 23 March 1966, we hold that the search warrant was properly issued.

The defendant urges that the ruse used by the officers vitiates the validity of the search warrant and in support of his contention cites the case of Gatewood v. United States, 93 U.S.App.D.C. 226, 209 F. 2d 789 (1953). In our opinion *Gatewood* does not apply. In respect to the matter of the ruse, the trial court was again helpful and we quote his remarks:

"THE COURT: Yes. With respect to Mr. Rapp's motion upon the ground that the search was unreasonable because fraud was employed together with force to effect the search and seizure, the Court finds that while there was a ruse attempted to be employed by the arresting officers in attempting to gain entrance to the premises without first advising Miss ——— that they were armed with a Search Warrant, since that ruse was ineffective in accomplishing their purpose inasmuch as she had closed the door on them, the Court finds that such a ruse would not be applicable under the circumstances."

We are not called upon to determine the applicable rule of law had the officers been successful in obtaining an entrance to the apartment by the use of the ruse. We can well understand the woman's testimony wherein she stated that she was very excited, and that she did not hear the officers identify themselves nor state that they had a search warrant and that:

"I didn't say anything. I just got scared.

\* \* \* \* \* \*

"I thought somebody was just trying to break the door in and do some kind of crime.

\* \* \* \* \* \*

"When they tried to, when they were trying to open the door, he tried—when they got through the front door, the inside door, he tried to keep the door closed by pushing it."

While we recognize that there is a possibility that advance notice may cause narcotics to be disposed of or concealed, we do not condone the ruse which was used in this instance. We shudder to think of the consequences had the defendant, not hearing the officers identify themselves, or having no reason to believe that they were officers, decided to protect his home, humble as it was, with a shot gun. In this case, we agree with the decision of the trial judge who heard the evidence and observed the witnesses.

The criminal complaint which was filed in the justice court which was the basis of the preliminary hearing and on which the defendant was bound over to the Superior Court, was not signed by the officer who arrested the defendant in the residence immediately following the securing and field testing of material which proved to be heroin. The complaint was signed by the police department's liaison officer. It is urged that § 13–1418 A.R.S. requires that the complaint be signed by the arresting officer. We do not agree.

"§ 13–1418. Duty of officer after arrest without warrant

An officer who has arrested a person without a warrant shall without unnecessary delay take the person arrested before the nearest or most accessible magistrate in the county in which the arrest occurs, and shall make before the magistrate a complaint, which shall set forth the facts showing the offense for which the person was arrested."

The case of State v. Currier, 86 Ariz. 394, 347 P.2d 29 (1959), while not expressly in point, established principles of law which authorize the procedures followed in the instant case.

The preliminary hearing was held and the defendant was bound over on the 23rd day of December 1964. He was placed in the County Jail in lieu of posting a bond. 27 days later, that is on the 19th of January 1965, the Information was filed and 16 days later, that is on the 11th of February, he was arraigned. It is urged that the defendant was not accorded the speedy justice to which he is entitled notwithstanding the fact that the Information was filed within the 30 days spec-

ified within Criminal Rules 236, 17 A.R.S. and that he was arraigned so that the trial could be set within sixty days after the filing of the information as required by Criminal Rules 236 and 240. On the 22nd day of January, a motion to reduce bond was filed. This motion was assigned to the judge hearing criminal motions, who granted the same on the 27th day of January. The defendant was unable to post the reduced bond. On 4 February Mr. Rapp was appointed to defend the defendant and on 9 February he filed a motion to quash as well as a motion to dismiss. These were argued and denied on the 11th of February. Upon arraignment on 11 February the sixty day period was waived and the case was set for trial. We are not called upon to comment relative to the apparent use of a major portion of the maximum time allowed by the rules for the reason that these questions are rendered moot by the waiver of the sixty day period.

The judgment and sentence are affirmed.

DONOFRIO, J., concurs.

CAMERON, Judge (dissenting).

I regret that I must dissent. The facts are clear as set forth in the opinion, that when the two officers went to the front door there was nothing whatsoever to indicate to the woman who responded to their presence that they were in fact police officers or that they possessed a search warrant. No identification was shown to this woman, the officers were not in uniform, and they stated that they were there for the purpose of checking and repairing some electrical wiring. Under these circumstances, the woman had every right to refuse them admittance. Under these facts, the woman had no reason to believe the two alleged workmen, if and when they later stated they were officers and had a search warrant. It was evidently the opinion of the court below and the opinion of the majority of this Court, that the actions of the police officers in attempting to obtain admission through a ruse, had no effect whatsoever upon the subsequent announcement by the officers that they were in fact police officers, and that, therefore, the forceful entering of the premises under the warrant was reasonable and lawful. With this I cannot agree.

The action of the police officers in this case renders the search and seizure unreasonable and therefore unlawful, despite the fact that they held a valid warrant. Our statute states in part:

> "The officer may break open an outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, *after notice of his authority and purpose* he is refused admittance. * * *" § 13–1446 A.R.S. (Emphasis added.)

There are cases which have held that a police officer armed with a warrant may break into a private dwelling place without first announcing his purpose, and giving the occupants the chance to admit them, when the circumstances surrounding the search and seizure are such as to make said announcement unreasonable as a matter of law. People v. Ker, 195 Cal.App.2d 246, 15 Cal.Rptr. 767 (1961), affirmed 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; People v. Maddox, 46 Cal.2d 301, 294 P.2d 6 (1956), cert. denied 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65. These cases are mostly concerned, as here, with searches for and seizures of narcotics. In the instant case, had the two officers appeared in uniform and after the door was opened announced their purpose and made an immediate even forceful entry, I would not feel compelled to disagree with the majority opinion.

Generally, laws authorizing invasion of private premises and sanctity of the home by search and seizure proceedings are to be strictly construed. Murphy v. State, 95 Okl.Cr. 333, 245 P.2d 741 (1952); Edwards v. State, 95 Okl.Cr. 37, 239 P.2d 434 (1951). The constitutional guarantee against unreasonable searches and seizures marks the right of privacy as one of the unique values of our civilization. The law prohibiting

unreasonable searches and seizures was designed to protect both the innocent and the guilty from unreasonable intrusions upon their right of privacy while leaving adequate room for necessary process of law enforcement. Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). And what is a "reasonable search" is not to be determined by any fixed formula but is to be resolved according to the facts of each case. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), State v. Baca, 1 Ariz.App. 16, 398 P.2d 924 (1965). To encourage the action of the officers in this case can only lead to breaches of the peace and personal violence. As the majority opinion points out, the woman in the instant case would have had every right to repel this invasion by two alleged workmen with such means as were at hand. Their shouts that they were police officers and that they possessed a search warrant were ineffective as notice of their authority under our statute (13–1446 A.R. S.) because they had by their prior actions led the woman to believe that they were in fact not police officers. By this action the officers destroyed the cloak of legality that the warrant gave them in breaking and entering the premises. In a recent federal case concerning a city detective who, having first obtained a search warrant, knocked on the door of an apartment, received no answer, but heard some scuffling noise on the inside, and knocked the door open with a sledge hammer, the court said:

> "[t]he district court * * * properly concluded that the search warrant per se did not insulate the law enforcement representatives from the necessity of reasonably conducting their search. * * *" United States ex rel. Manduchi v. Tracy, 3 Cir., 350 F.2d 658, 660 (1965), cert. denied 382 U.S. 943, 86 S.Ct. 390, 15 L.Ed. 2d 353 (1965).

In my opinion, limited to the particular facts in the instant case, the search was unreasonable and the evidence obtained therefore inadmissible.