469 P.2d 77

**STATE of Arizona, Appellee,**

v.

**Rudolph BRADY, Appellant.**

**No. 1971.**

Supreme Court of Arizona,
In Division.
May 14, 1970.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Louis L. Deckter, Tucson, for appellant.

LOCKWOOD, Chief Justice.

The defendant, Rudolph Brady, was convicted by a jury of two counts of possession of narcotics (heroin) in violation of A.R.S. § 36–1002. He received concurrent sentences of not less than two nor more more than five years on each count. He appeals.

On May 13, 1968, State Narcotics Agents obtained a warrant to search the premises of a person known only as "Bernie" located at 672 N. Anita, Apartment 5, in Tucson, Arizona. With the warrant, Agents Richardson Heinze and Dierking proceeded to the apartment. None of the agents were in uniform. Thy were dressed in undercover garb consisting of Levi pants, boots or casual shoes and "T" shirts or casual sports shirts. At least one had long sideburns and a beard.

Richardson and Heinze approached the apartment from the front and Dierking

went to the rear to prevent any possibility of escape. When Richardson and Heinze got to the apartment, the inner door was open. However, an outer screen door was closed and locked with a hook-and-eye latch.

Agent Richardson called to the persons who he could see in the living room of the apartment, "Is Bernie here?" At this point Robert Smith, the defendant's roommate, appeared at the door. He was shirtless and had shaving lather on his face. According to Agent Richardson's testimony, the following then took place:

"A. I again asked if Bernie was there and he [Smith] made no statement. I then pulled out my badge, identified myself, and told him I had a search warrant for the residence.

"Q. What happened then?

"A. At this time he backed away from the door and I opened the screen door and entered the building with Agent Heinze.

"Q. Had the screen door been locked?

"A. Yes, it was locked.

"Q. Do you know how it was locked?

"A. It was by a hook-and-eye lock."

The agents presented Smith with the warrant, advised everyone in the apartment to remain in the living room, and then searched the premises. On a ledge over the bathroom door they found an empty Pall Mall cigarette package containing a spoon, eyedropper and glass vial with cotton and a residue in it. These items were later tested by a chemist and found to contain usable quantities of heroin. At this time the defendant and Smith were formally arrested and advised of their Miranda rights. The defendant indicated that he did not wish to make any statement.

The agents continued their search. Just prior to his search of a living room closet, Agent Heinze asked whose clothes were kept in the closet. The defendant replied that they were his. A search of them uncovered several "papers" of heroin hidden in the pockets and lining.

When the agents were ready to take the defendant and Smith to the County Jail, the defendant asked if he could change clothes. One of the agents accompanied him into the bedroom. At this time, in response to the agent's remark that they did not want to tear the apartment apart, the defendant replied that they had found all the "stuff".

Shortly after the defendant was booked into the county jail, he became ill and was taken to the Pima County Hospital. When he arrived at the hospital he was completely unconscious and not responding to questions. A drug overdose was the suggested cause. A gastric lavage was administered to pump out the contents of his stomach. The defendant recovered, but remained in the hospital for treatment of heroin addiction.

The defendant's first contention on appeal is that although the agents obtained a valid search warrant prior to making the search, their execution of the warrant was unlawful and, therefore, the products of the search should have been excluded from evidence at the trial.

■ A.R.S. § 13–1446 provides that an officer may break open a door to a house to execute a search warrant if, after notice of his authority and purpose, he is refused admittance. If the officer's entry does not comply with the requirements of this statute, the subsequent search is not lawful and the evidence obtained thereby not admissible. State v. Mendoza, 104 Ariz. 395, 454 P.2d 140 (1969); McClure v. United States, 332 F.2d 19 (9th Cir. 1964) cert. denied, 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963; Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

■ The crux of the defendant's argument turns on the question of whether the agents adequately announced their purpose and authority and were then refused admittance before they broke open the screen door. Where there is any conflict, the evidence must be viewed in the light most favorable to sustaining the conviction. State

v. Duncan, 105 Ariz. 426, 466 P.2d 380 (1970).

When viewed in this light, there can be no question that Agent Richardson announced the officers' authority and purpose. When Smith appeared in the doorway and answered that "Bernie" was not there, Richardson produced his badge and the search warrant and stated that the agents had come to search the premises. The only remaining question, then, is whether Smith's actions at this time amounted to a refusal of admittance.

In McClure v. United States, supra, the Ninth Circuit Court of Appeals, in construing the Federal counterpart of our statute, stated:

"The refusal of admittance contemplated by the statute will rarely be affirmative, but will oftentimes be present only by implication. * * * There are no set rules as to the time an officer must wait before using force to enter a house; the answer will depend upon the circumstances of each case." 332 F.2d at 22.

The opinion concludes that the "test" to be applied to determine whether there was a refusal of admittance is whether:

" * * * the circumstances were such as would convince a reasonable man that permission to enter had been refused." 332 F.2d at 22.

This is the first case in which this Court has been asked to determine what constitutes a refusal of admittance under A.R.S. § 13–1446.[1] We think the reasoning in the McClure case, supra, is sound and applicable to the facts of the instant case.

It is true that the agents were in disguise when they first approached the apartment. However, entry was not gained via this ruse. (See State v. Valenzuela, 3 Ariz.App. 278, 413 P.2d 788 (1966)). The agents identified their authority and pur-

pose, and then Smith stepped back. We hold this sufficient "as would convince a reasonable man that permission to enter had been refused." McClure v. United States, supra. Therefore, the search was lawful, and the items seized were properly admitted into evidence.

Defendant's next contention is that statements he made during and after the search were involuntary under the doctrine of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and therefore inadmissible.

The testimony at the voluntariness hearing indicated that the defendant had taken a heavy dose of heroin intravenously a short time before the agents' arrival. While the apartment was being searched, Agent Richardson observed that the defendant was sweating profusely and shaking badly. At some point, while the agents were conducting their search, the defendant ingested a quantity of barbiturates. The defendant was taken to the Pima County Jail and then transferred to the Pima County Hospital. He was treated there as a narcotic overdose patient.

The defendant admits that prior to making any statement, he was fully advised of his constitutional rights. He argues however, that he was so intoxicated and his will so overborne with narcotics that, as a matter of law, he was not capable of knowing or understanding these rights and, therefore, he was incapable of effectively waiving them.

At the outset, it is important that we distinguish any cases involving the administration or withholding of drugs by the authorities as coercive tactics used to elicit statements from a suspect. E. g., Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In the instant case we find that the defendant's intoxication was completely voluntary.

---

1. State v. Mendoza, 104 Ariz. 395, 454 P. 2d 140 (1969) dealt with A.R.S. § 13–1446, but did not determine what constituted a refusal of admittance. Mendoza merely determined that the search was unlawful where there was a complete failure by the officers to announce their identity and purpose before they broke open the door.

In the case of State v. Clark, 102 Ariz. 550, 434 P.2d 636 (1967), this Court summarized the general rule with respect to confessions and admissions made by a person voluntarily under the influence of intoxicants. This rule is as follows:

" * * * proof that the accused was intoxicated at the time he confessed his guilt will not, without more, prevent the admissibility of his confession. See e. g., Commonwealth v. Chapman, 345 Mass. 251, 186 N.E.2d 818 (1962); People v. Dorman, 28 Cal.2d 846, 172 P.2d 686 (1946); 69 A.L.R.2d 361. However, if it is shown that the accused was intoxicated to such extent that he was unable to understand the meaning of his statements, then the confession is inadmissible. Roper v. People, 116 Colo. 493, 179 P.2d 232 (1947)." 102 Ariz. at 553, 434 P.2d at 639.

The Clark case dealt with the admissibility of statements made under the influence of liquor. In the instant case the defendant claims his mental ability was impaired by narcotic drugs. However, the rules governing the admissibility of statements made under the influence of either are substantially the same. Reddish v. State, 167 So.2d 858 (Fla., 1964).

The trial judge heard all of the evidence surrounding the defendant's statements. He concluded that the defendant was fully advised of his constitutional rights and that he effectively waived them. We think the evidence was sufficient to support this finding.

The final point the defendant raises concerns certain statements made by the County Attorney in his closing argument to the jury. After the judge had ruled that the defendant's statements were voluntary and admissible, the following motion and order were made:

"In Chambers: *. * *

"Mr. Gonzales [defendant's attorney] moves that he be permitted to put the Deft. [sic] on the stand for the limited purpose of testifying as to the voluntariness of Defts. [sic] statements. State does not object.

"It is Ordered that Defts. [sic] motion is granted."

Thereafter, in the presence of the jury, the defendant took the stand and gave his version of the circumstances surrounding the statements he made to the agents during their search. The defendant's testimony as to the voluntariness of his statements constituted the only testimony by the defendant at the trial. Defendant testified that he had been given narcotic drugs by various doctors for chronic illness. But he also testified on direct examination as follows:

"Q. (By Mr. Gonzales) Do you recall the day of May 13, 1968?

"A. May the 13th, yes, I vaguely recall the incident that happened that night.

"Q. Prior to—just tell the Court very briefly what happened at about seven o'clock?

"A. Well, about six-thirty I was in the bathroom and I took my medication, which is what you call a fix, self-administered narcotics.

"Q. What kind of drug was this?
"A. Heroin.

"Q. Did you have a prescription for this Heroin?

"A. No, I didn't.
"Q. Did you take any of your other medication along with this?

"A. Yes, I had taken three Nembutals, which are sleeping sedatives prescribed by a doctor."

In his closing argument to the jury, the County Attorney made the following remarks:

"Mr. Patchell: * * *

"Mr. Brady at six-thirty on May 13, 1968, admits from the witness stand that he had possessed Heroin and that he had taken a full paper of Heroin. Certainly that's proof beyond any reasonable doubt that he possessed Heroin on May 13, 1968.

"Mr. Gonzales: Your Honor, I'm going to object at this time. May I approach the bench for a second?

"THE COURT: You may.

"(Conference at the bench.)

"MR. PATCHELL: He told you from the stand that he didn't have a prescription for Heroin. One of the elements of the crime is that it can be possessed on the prescription of a physician. Obviously he didn't have a prescription. He told you he didn't. The additional Heroin that was found in the closet in the clothing is a tremendous amount of Heroin. He obviously possessed that."

" * * * I think that this State has more than borne the burden, assisted by the Defendant himself, and the proof is certainly beyond any reasonable doubt. * * *"

The contention is that reversible error was committed because these statements by the County Attorney violated the defendant's privilege against self-incrimination and allowed evidence admitted for a limited purpose to be used for another and different purpose. Except for a general instruction that counsels' arguments were not evidence, there were no limiting instructions or admonitions to the jury in regard to these statements. The defendant made a motion for a mistrial following the closing arguments and this was denied.

The Court stated the applicable law in this situation as early as the case of Sullivan v. State, 47 Ariz. 224, 55 P.2d 312 (1936). The following test was announced in that case.

" * * * Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by these remarks." 47 Ariz. at 238, 55 P.2d at 317.

The defendant had voluntarily testified that he was in possession of heroin which he had taken on May 13th. Although the defendant was permitted to take the stand before the jury for the limited purpose of testifying as to voluntariness of the statements made to the officers, he is bound by that testimony, and the jury was entitled to consider it. The county attorney's remarks therefore did not constitute error.

Affirmed.

STRUCKMEYER, V. C. J., and McFARLAND, J., concur.