514 P.2d 477

**STATE of Arizona, Appellee,**
**v.**
**William Frank ADAMS, Appellant.**
**No. 2516.**

Supreme Court of Arizona,
In Division.
Sept. 28, 1973.
Rehearing Denied Oct. 30, 1973.

---

Gary K. Nelson, Atty. Gen. by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Mathis Becker, Phoenix, for appellant.

HAYS, Chief Justice.

A jury found defendant, William Frank (Billy) Adams, guilty of possession of dangerous drugs for sale. There is ample evidence in the record to support the conviction.

The defense was that he was living with a girl named Sandra; that they had periods when they would get into violent arguments over the fact that she was occasionally seeing another boy friend also named Billy Adams. At such times, defendant would leave her for several days. Her testimony was that the last time he left her, she called the other Billy Adams, who came over and gave her grocery money and comfort because she was ill. He also asked permission to leave a large paper bag in her suitcase which was kept on a closet shelf in the bedroom. She granted permission. A few days later defendant returned, and that afternoon a group of policemen searched the house by authority of a search warrant and found huge quantities of amphetamines and other dangerous drugs in the paper bag in the suitcase. They also found a small box with a few pills in defendant's pants pocket, which fact he explained by saying that he found them on Sandra's night table and took them away from her to throw away but forgot about them. Sandra admitted lying to the police while they were investigating the facts and apparently the jury disbelieved the defense version.

Three questions are raised on appeal:

I

■ The trial judge prohibited defense counsel from asking prospective jurors on voir dire the results of the criminal cases on which they had previously sat. Counsel made no attempt to ask them how they voted. It was his theory that (a) this information was available to the prosecutor, who had a card index on each juror, showing the results of previous cases, which index he consulted during the voir dire, and (b) this information was important to the defense in deciding which jurors to challenge peremptorily.

The judge's ruling was not prejudicial. In our opinion, the information as to how the previous juries went, without knowing how the particular juror voted, is information so tenuous that the defense could not use it with much chance of knowing whether the juror was defense-oriented or prosecution-oriented.

Though the better practice would be to allow the defense the simple question of how the previous cases turned out—so as to give the defense the same information that the prosecution had—there was no error and no reason to believe that different jurors would have reached a different result.

II

■ The defense argues that the affidavit upon which the search warrant was issued did not sufficiently inform the magistrate that the information was reliable and

that the information in it was probably accurate. The defense freely admits that such affidavits are tested by much less vigorous standards than those governing the admissibility of evidence at a trial. However, it correctly contends that the affidavit must meet the two tests of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723, where the affidavit is based on hearsay information.

In the instant case, it was stipulated that no evidence was taken by the issuing magistrate, and that he relied entirely upon the affidavit which was made by the police officer. The affidavit stated that the affiant had probable cause to believe and did believe that defendant had on his person, and that the premises to be searched contained, amphetamines; that affiant received information from a confidential source that defendant possessed a usable amount of amphetamines on his person and in his house; that affiant believed the informant to be reliable because the latter "personally saw" defendant in possession on his person and in his house; that informant also told affiant that defendant was selling the drugs out of his house; that affiant believed the information to be reliable because "on numerous occasions in the past," . . . the informant has been very helpful "in keeping affiant abreast of the illicit narcotics traffic in Phoenix, where narcotics are used and sold, and persons using and selling narcotics;" that past information obtained from the informant has resulted in the arrest of 16 other persons on narcotic charges. The affidavit described both defendant and the exterior of his house. Affiant also made it clear that the revelation of the informant's identity would endanger his life and render his future value to the police department nil.

Defendant contends that the above information does not measure up to *Aguilar, supra*; that all sixteen arrests may have arisen from just one tip, and in any event there is no showing that the tip resulted in any conviction. He cites Pew v. People, 485 P.2d 118 (Colo.); Watson v. Mazur-kiewicz, 326 F.Supp. 622 (E.D.Pa.); People v. Young, 4 Ill.App.3d 602, 279 N.E.2d 392. *Aguilar, supra,* requires that the affidavit contain more than mere conclusions—that it contain enough of the underlying facts to enable the magistrate to determine whether the conclusion is logical. *Aguilar* permits the affidavit to be based upon hearsay, if it contains enough to enable the magistrate to conclude that the informant is credible.

■ Defendant argues that although the informant saw defendant in possession of the drugs, he did not see the defendant selling them. It is not necessary that the informant see all the elements of the crime. It is enough that he saw defendant in possession. Possession for sale was proven by the quantity of pills found in the house.

For the above reasons, we feel that the affidavit is sufficient under the tests of *Aguilar, supra,* which is of course binding upon us.

### III

■ Defendant also argues that the execution of the warrant did not comply with the restrictions of A.R.S. § 13–1446 subsec. B, which at the time of this crime, read:

"The officer may break open an outer . . . door . . . of a house . . . to execute the warrant, if, after notice of his authority and purpose he is refused admittance . . . ."

Whether there was a knock, how long after any knock the officers waited before entering the unlocked door, etc., are disputed facts. In State v. Brady, 105 Ariz. 592, 469 P.2d 77, a case involving the above statute, we said:

"When there is any conflict, the evidence must be viewed in the light most favorable to sustaining the conviction."

Here, one officer testified that he knocked, waited about twenty seconds during which he heard sounds inside the house "like a chair being scooted," and then he rushed in. The door was unlocked. An-

other officer testified that they entered almost simultaneously with the knock—he estimated about five seconds afterwards.

It is difficult, in a raid, to guess at elapsed time. The problem is to give the occupants time to open the door. We believe that the conflict in the evidence is resolved by the verdict.

For the reasons set out above, the judgment of the Superior Court is affirmed.

CAMERON, V. C. J., and HOLOHAN, J., concur.