558 P.2d 746

**STATE of Arizona, Appellee,**

v.

**Julian Esquivel GAITAN, Appellant.**

**No. 1 CA–CR. 1425.**

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 3, 1976.

Rehearing Denied Dec. 28, 1976.

Petition for Review Denied Jan. 18, 1977.

---

Bruce E. Babbitt, Atty. Gen. by Ronald L. Crismon, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Garth V. Smith, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

The appellant, Julian Esquivel Gaitan, raises three issues in this appeal from his conviction of possession of narcotic drugs (heroin):

1. That there was a denial of his right to a speedy trial under Rule 8.2(c), Rules of Criminal Procedure, 17 A.R.S.;

2. That the search warrant utilized in this case was defective; and

3. That the search warrant was served in an unlawful manner.

The facts underlying these contentions are not in substantial dispute. Immediately prior to September 11, 1974, John Thompson, criminal investigator for the Arizona Department of Public Safety, received information from a confidential reliable informant that "Little Julian Gaitan" was in possession of heroin at his home on Luna Street in El Mirage, Arizona. Based upon this information, Thompson contacted Victor Ruis, in the narcotics division of the Criminal Investigation Division of the Department of Public Safety as Agent Ruis had a previous contact with a "Little Julian" who lived on Luna Street in El Mirage. Agent Ruis then supplied Agent Thompson with the information he had acquired from his investigation in January, 1974, as to the appellant's age, physical description and his residence as "14 Luna Street, El Mirage, Arizona."

Based upon the information supplied by Agent Ruis, Agent Thompson secured a search warrant from the Justice of the Peace of Peoria Precinct for "Jesus Esquivel Gaitan" and described the subject as to age, height, weight and color of eyes and hair. The premises to be searched under the warrant were described as "14 Luna Street, El Mirage, Arizona." On September 11, 1974, the warrant was served on appellant and the premises searched bore the address of "13814 Luna Street, El Mirage."

Agent Ruis explained the discrepancy as to name and residency as follows:

"Now, back in January, I was involved in an investigation of alleged narcotics activity on the part of Mr. Gaitan, the middle part of January.

"And this is when I saw him; this is when I got a picture, this is when I got his address. Because previously, the old address was 14 Luna Street. I went out to the house and I looked at the address. I noticed there was a change in address.

"I knew Julian. I also had a picture of Julian. However, in my personal notes, for some reason or other, I transcribed the first name from the driver's license to my notes as 'Jesus' instead of 'Julian'; so for that reason, that is the cause of the

mistake; because Agent Thompson used my information on the identity of the defendant for the search warrant."

There is no contention that the house located at "14 Luna Street" is not the same house as "13814 Luna Street." Likewise, there is no contention that the physical description contained in the search warrant does not match that of the appellant.

Service of the warrant was accomplished first by Agent Ruis. He first called appellant's name from the sidewalk. Receiving no response, he went up to the front door, which was open, and knocked again, calling appellant's name. Appellant appeared at a side window and Agent Ruis asked him if he could talk to him, to which appellant replied, "Sure, man; come on in." Agent Ruis waited outside for approximately thirty seconds and during this time he heard movement within the house. When appellant did not appear, he then shouted, "State Narcotics, search warrant." Approximately six or seven seconds later, Agent Ruis entered the house through the open door, secured the appellant and with the help of other officers, appellant was placed under arrest and his person searched, revealing several packets of heroin.

Appellant was taken before a magistrate on September 12, 1974, for his initial appearance. Apparently, the appellant was subsequently released because of the lack of a formal complaint being filed. On October 2, 1974, a formal complaint was finally filed, and a summons issued for appellant's appearance on October 15, 1974. On that date, appellant appeared again before the magistrate. On March 4, 1975, defense counsel moved to dismiss the charges on the ground that the 120 day period provided by Rule 8.2(c), Rules of Criminal Procedure, 17 A.R.S., had expired on January 11, 1975. This motion was denied.

Also denied was appellant's motion to suppress and following this denial, appellant agreed to submit the issue of his guilt or innocence on the basis of the preliminary transcript, the motion to suppress and the chemist's report. The trial court found ap-

pellant guilty of possession of a narcotic drug and placed him on probation for a period of five years. Appellant has appealed.

■ Appellant first argues that the 120 day time period provided by Rule 8.2(c), Rules of Criminal Procedure, 17 A.R.S.[1], must commence from the date of his "initial appearance" before the magistrate on September 12, 1974. Appellant then argues that using the September 12, 1974 date as a starting point, the 120 day period expired on January 11, 1975. The State argues that the proper starting date is October 15, 1974, when appellant first appeared after a formal complaint had been filed.

We do not need to determine this issue for it appears that appellant has waived his right to raise a violation of the Rule. The omnibus hearing form signed by both counsel on December 11, 1974, stated that the "maximum allowable trial date" was February 5, 1975. On February 3, 1975, appellant filed a motion to continue the trial date to March 4, 1975, which was granted. Appellant did not file his motion to dismiss until March 4, 1975, approximately two months *after* the expiration of the time contended by appellant to be applicable. We hold, under these circumstances, appellant's motion was untimely and the limitations of Rule 8.2(c) are deemed to have been waived. *State v. Lee,* 25 Ariz.App. 220, 542 P.2d 413 (1975).

Appellant does not contend he was prejudiced by the delay involved here, nor does he contend that the delay involves a violation of his right to a "speedy trial" guaranteed by the United States or Arizona constitutions.

We therefore hold the trial court properly denied appellant's motion to dismiss on the basis of a violation of Rule 8.2(c), Rules of Criminal Procedure, 17 A.R.S.

■ Appellant next argues that the discrepancies contained in the search warrant

as to his name and address rendered the search warrant fatally defective and his motion to suppress the heroin obtained as a result of the service of that search warrant should have been granted. In this regard, appellant first contends that the use of the name "Jesus" rather than "Julian" does not sufficiently describe the appellant so as to preclude exercise of discretion by the serving officer, pointing out that his father and brother's names are "Jesus" and citing *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). Appellant overlooks the fact that in addition to the search warrant bearing the name of the individual sought to be searched, it contained a physical description and age of the appellant which was incompatible with the age and description of either appellant's father or brother. Also, the arresting officers had a picture of the appellant and Agent Ruis upon first approaching the appellant called him "Julian". The facts in this case leave no doubt that the officers knew whom they intended to search, were not haphazardly going through the neighborhood looking for an unknown individual and that the search warrant itself accurately described the appellant.

As was stated in *State v. Carroll,* 111 Ariz. 216, 526 P.2d 1238 (1974), quoting from *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965):

"If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation.

\* \* \* \* \* \*

"[W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a com-

---

1. *c. Defendants Released from Custody.* Every person released under Rule 7 shall be tried by the court having jurisdiction of the offense within 120 days from the date of his initial

appearance before a magistrate on the complaint, indictment or information, or within 90 days from the date of his arraignment before the trial court, whichever is the lesser.

mon sense, manner." 111 Ariz. at 218, 526 P.2d at 1240.

Here, the search warrant accurately described the appellant and the officers involved intended to and did only serve "Julian Gaitan". It is apparent that the mistake in placing the name "Jesus" on the warrant was the result of the "haste of a criminal investigation." Under these circumstances, we hold that the warrant was not fatally defective because of the mistaken given name of the appellant. *See Steele v. United States*, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925); *State v. Jung*, 19 Ariz. App. 257, 506 P.2d 648 (1973).

 Likewise, appellant argues that a discrepancy exists as to the address to be searched—"14 Luna Street" as compared to "13814 Luna Street"—which is fatal to the validity of the warrant based on *State v. Gillin*, 112 Ariz. 348, 541 P.2d 1150 (1975). *Also see State v. Boniface*, 26 Ariz.App. 118, 546 P.2d 843 (1976). In both *Gillin* and *Boniface*, the search warrant described a location different from that actually searched by the officers. Neither *Gillin* nor *Boniface* are applicable here for "14 Luna Street" is the same location as "13814 Luna Street". Agent Ruis' testimony is clear that between the time he obtained an address for the appellant in January, 1974, and the serving of the warrant in September, 1974, the numbering on the houses had changed. The officers did in fact search the house named in the search warrant and therefore there was no discrepancy.

We hold that the trial court properly denied appellant's motion to suppress based upon facial discrepancies in the search warrant.

Finally, appellant argues that the search warrant was improperly served under A.R.S. § 13–1446. This statute, in pertinent part, provides:

"B. An officer may break into a building, premises, or vehicle or any part thereof, to execute the warrant when:

"1. After notice of his authority and purpose, he receives no response within a reasonable time."

We somewhat doubt the applicability of this statute under the circumstances present here where Agent Ruis had initially been invited into the house by appellant and he did not technically "break" into the residence, he merely went through an already open door. But in any event, the "reasonableness" of the length of time the serving officer must wait after announcing his authority and purpose must be gleaned from the circumstances present. *See State v. Brady*, 105 Ariz. 592, 469 P.2d 77 (1970).

In this case there was testimony from which it could be reasonably found that Agent Ruis heard noises inside the home which would lead him to believe the narcotics that were believed to be on the premises were being destroyed. Under these circumstances, the trial court properly held that a wait of six to seven seconds after announcing Agent Ruis' authority and purpose was a "reasonable" time to wait before entering the residence and securing the appellant.

For the foregoing reasons, the judgment of the trial court is affirmed.

SCHROEDER, P. J., and WREN, J., concurring.