587 P.2d 747

**STATE of Arizona, Appellee,**

v.

**Ronald Edward BATES, Appellant.**

**No. 4376.**

Supreme Court of Arizona,
En Banc.

Nov. 13, 1978.

John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III, and Bruce M. Ferg, Asst. Atty. Gen., Phoenix, for appellee.

Gene R. Stratford, Phoenix, for appellant.

HAYS, Justice.

This is an appeal from a conviction for possession of marijuana in violation of A.R.S. § 36–1002.05 and § 36–1002.10. Only one question is presented: did a forced entry made three to five seconds after the police knocked and announced their purpose and authority to execute a search warrant comply with the requirements of A.R.S. § 13–1446(B)? We hold that it did not, and reverse and remand for entry of judgment of acquittal.

Defendant Ronald Edward Bates was arrested at the home of Waldo Diaz on May 19, 1977 when the Phoenix police executed a search warrant pertaining to Diaz' apartment. Charged by information with the possession of marijuana, Bates filed a motion to suppress the evidence, which was denied. Thereafter, Bates submitted the case to the court for trial without a jury on the basis of the preliminary hearing transcript, departmental reports, and the tape recording made by the police officers during the execution of the search warrant. Bates was convicted of unlawful possession of marijuana and placed on two years probation. Appeal was timely filed and we have jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e).

There is little disagreement on the facts of this case. On May 19, 1977 officers of the Phoenix Police Department obtained a lawfully issued warrant to search the apartment of Waldo Diaz for heroin. Prior to entry, the officers placed the residence under surveillance to ascertain whether anyone was home, and they observed Bates and a female companion enter the residence. The police then positioned themselves with some of the officers at the front and back doors, and others at a window on the side of the building. The curtains at the window were open, allowing the officers positioned there visual access to the interior of the residence where they observed Bates sitting by the front door.

One of the officers knocked at the door and identified himself to the occupants as

"Jim." A male voice, inside the residence, responded "Jim who?" The officer then replied "Jim, you know." None of the occupants said anything further or made any discernible movement toward the door. When no response was received, the officer stated that they were the police, that they had a search warrant, and that the door should be opened. After waiting three to five seconds without answer or action from inside, the police forcibly opened the door. Bates was arrested for possession of a marijuana cigarette he had been observed through the window to be smoking.

The statutory basis for a forcible entry to execute a warrant is found in A.R.S. § 13–1446(B) which states:

"An officer may break into a building, premises, or vehicle or any part thereof, to execute the warrant when:

1. After notice of his authority and purpose, he receives no response within a reasonable time.

2. After notice of his authority and purpose, he is refused admittance."

Bates contends that the executing officers failed to comply with these provisions, because there was no refusal of admittance, and because a reasonable time had not elapsed. As a consequence, he alleges, the marijuana found during the search and used as evidence against him, and all evidence connected with it, should have been suppressed.

Under the first clause of the statute, forcible entry to execute a warrant is permitted when an officer, having announced his authority and purpose, "receives no response within a reasonable time." The second clause authorizes forcible entry upon refusal of admittance. It too requires that notice of the police officer's authority and purpose be given before forcible entry may be had. In the instant case, it is clear that the notice component of the statute has been complied with.

In *State v. Brady*, 105 Ariz. 592, 595, 469 P.2d 77, 80 (1970), we cited with approval language from *McClure v. United States*, 332 F.2d 19, 22 (9th Cir. 1964) and held that what constitutes a refusal of admittance under A.R.S. § 13–1446(B) depends upon the circumstances of each case. We think that logic equally applicable to a determination of what constitutes a reasonable time under the first clause of A.R.S. § 13–1446(B).

In *State v. Dudgeon*, 13 Ariz.App. 464, 468, 477 P.2d 750, 754 (1970), the Court of Appeals held that police officers executing a search warrant were justified in waiting less than five or six seconds before entering when they heard sounds which militated against delay. No such sounds were heard at all in the instant case. The testimony of one of the officers stationed at the window illustrates that, after the announcement, he observed no one coming to the door, no movement by any of the occupants during the course of the entry, nor did he hear anything at all suspicious or unusual.

"Q How long a time took place then from the time that Sergeant Warden said, 'Jim, you know,' until he ordered Mavromatis to push the door in?

"A Couldn't be totally sure, but a few seconds after that.

"Q And in fact, it was the very next thing after saying, 'Jim, you know,' and not getting any answer that Warden said, 'Police officers. We are here—we have a serach [sic] warrant.' It was the very next thing he said, wasn't it?

"A He then after a short period of time, then he did say, it was the police, 'We have a search warrant. Open the door,' at which time from my position I observed no one coming towards the door at all."

.    .    .    .    .

"Q You didn't hear any movement, did you, that was indigative [sic] of a weapon being grabbed or reached for, did you?

"A Through the whole course of the entry, I observed no movement whatsoever.

"Q At the very time that Warden was saying the words, 'It's Jim, Jim, you

know,' and then, 'Police officers, we are here to execute a search warrant,' while those words were being said, were you keeping your eyes to that window into the apartment?

"A Yes.

"Q And what did you observe?

"A I observed no movement whatsoever."

Moreover, the police, here, had no prior information that the occupants of the apartment would be armed or dangerous:

"Q Did you have occasion to discuss the danger involved in the execution of this warrant if there were any special problems involved like the occupants being armed and dangerous?

"A So far as anybody being armed or dangerous, we didn't have any problems regarding that so far as I know."

The instant case is thus unique in the absence of exigent circumstances that might justify a decision that a three- to five-seconds wait after the announcement of purpose and authority was reasonable.

The mere fact that this search warrant was executed for the purpose of discovering narcotics does not necessarily create an exigent circumstance justifying immediate entry. In *State v. Mendoza*, 104 Ariz. 395, 399–400, 454 P.2d 140, 144–45 (1969), this court emphasized that, standing by itself, the easy destructibility of narcotics evidence is insufficient to provide reasonable cause for officers to believe that announcement of the purpose of their entry would frustrate the search, and therefore, relieve them of the necessity of announcing their identity and purpose. There must be "substantial evidence" to cause the police to believe evidence would be destroyed, irrespective of the evidence sought, otherwise A.R.S. § 13–1446(B) would become a nullity in narcotics cases. *Id.*

In its brief the state suggests that support for the forced entry may be found in the second clause of § 13–1446(B), which permits forcible entry upon refusal of admittance. On the facts of this case, we do not agree that three to five seconds constitute "lengthy inaction" sufficient to demonstrate constructive refusal of admittance. While we fully recognize that in some circumstances silence may constitute a refusal of admittance, *e. g., State v. Brady*, 105 Ariz. 592, 469 P.2d 77 (1970), we categorically reject the contention that if the occupants would not admit "Jim," they surely would not have voluntarily admitted the police. To accept such reasoning would not only penalize law-abiding citizens who are not in the habit of admitting complete strangers into their homes without cause, but would also distort the statutory aims of § 13–1446(B) of reducing the potential for violence towards officers and occupants of the house in which entry is sought, guarding against needless destruction and respecting individual privacy. *See State v. Mendoza, supra*, 104 Ariz. at 400, 454 P.2d at 144.

It is clear under Arizona law that evidence seized as a result of an illegal search and arrest renders that evidence inadmissible against the defendant in a subsequent trial. *State v. Brady*, 105 Ariz. at 594, 469 P.2d at 79. We therefore reverse and remand to the trial court for entry of judgment of acquittal.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.