628 P.2d 976

**The STATE of Arizona, Appellant,**

v.

**Daniel W. PILLER and Denise Flatt Piller, Appellees.**

**No. 2 CA–CR 2069.**

Court of Appeals of Arizona, Division 2.

April 28, 1981.

Beverly H. Jenney, Cochise County Atty. by James L. Riley, Deputy County Atty., Bisbee, for appellant.

Goldbaum & Goetz, P. C. by Dean A. Sipe, Tucson, for appellee Daniel W. Piller.

Frederick S. Chapman, Sierra Vista, for appellee Denise Flatt Piller.

## OPINION

HATHAWAY, Chief Judge.

Appellees were indicted on four counts of narcotics violations. The trial court granted their motion to suppress evidence seized at their residence pursuant to a search warrant. The state appeals the suppression order, presenting the following question:

"Did the trial court err in suppressing evidence due to a claimed violation of A.R.S. Sec. 13–3891, where officers executing warrants of arrest knocked and announced their purpose and authority, then due to the exigencies then present only waited five to ten seconds, received no response, although they heard movement within, and effected a forced entry into the residence?"

◼ The trial court's ruling on a motion to suppress will not be disturbed on appeal absent clear and manifest error. *State v. Smith*, 123 Ariz. 231, 599 P.2d 187 (1979); *State v. Wright*, 125 Ariz. 36, 607 P.2d 19 (App.1979). Viewing the evidence most favorably to support the ruling below, the trial court's conclusion that exigent circumstances did not exist is justified.

On January 23, 1980, at approximately 9:40 a. m., two teams of officers arrived at appellees' residence. One team had a warrant for the arrest of Daniel and the second team had a warrant for the arrest of Denise. Upon their arrival at the residence, three of the officers proceeded up the stairs to the front entrance, one officer stayed with the patrol cars and the other three officers surrounded the residence. The three officers who approached the front door, Peterson, Guthrie and Rodriguez, had to stand single file on the steps leading to the front entrance as the front porch permitted only one person to stand in front of the door. There was no room on the porch on either side of the door to move in the event of trouble and several windows of the residence faced towards the front porch area.

When all officers were in place, Peterson knocked on the front door and when he received no response, knocked again about 25 seconds later. After no response to the second knock within 10 seconds, Rodriguez called out Denise's name several times. A male voice from within responded: "Who's there?" Rodriguez again asked to speak to Denise. There was no response and after 15 to 20 seconds, the officers heard movement in the house which sounded like someone walking rapidly. Peterson then announced that they were police officers, had an arrest warrant, and asked that the door be opened. After five or six seconds had elapsed, Peterson forcibly broke open the front door and the three officers entered, ran through the living room with their guns drawn, and found Denise and Daniel in the bedroom. Denise was standing there nude and Daniel was in bed with a blanket pulled up under his chin. While arresting appellees, marijuana was observed. The officers obtained a search warrant which they executed later that day and seized the items sought to be suppressed.

The narcotics seized pursuant to the search warrant were not the basis for appellees' arrest. The arrests of appellees and about 10 others ended a lengthy narcotics investigation of Manuel Marusich. The investigation included a court-authorized wire tap of Marusich's telephone and another court-authorized wire tap of appellees' phone.

On the morning of appellees' arrest, a large group of law enforcement officers met at the Narcotics Strike Force building in Bisbee. A briefing session was conducted during which the officers assigned to arrest appellees were informed that a .357 magnum handgun might be in the Piller residence. This information was derived from a monitored phone conversation between Marusich and Daniel in which they

had discussed arrangements for purchase of the gun for Daniel. The evidence which was the subject of the arrest had been seized in San Francisco three days before and was under the control of the San Francisco Police Department.

The trial court, in granting the motion to suppress, found that there was no evidence suggesting that appellees would use a weapon against the police or that they had violent or assaultive propensities, and that there was no compliance with the requirements of A.R.S. Sec. 13–3891, in that there was insufficient evidence to support a belief that the officers would be refused admittance at the time they entered appellees' residence.

The right of an officer to force entry into a building in order to effect an arrest is set forth in A.R.S. Sec. 13–3891:

"An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such an arrest for a felony without a warrant, as provided in Sec. 13–3883, may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if the officer is refused admittance after he has announced his authority and purpose."

There is no question that Officer Peterson announced his authority and purpose. Appellees did not expressly deny admittance. However, refusal may be implied from the circumstances. *State v. Brady*, 105 Ariz. 592, 469 P.2d 77 (1970); *State v. Bates*, 120 Ariz. 561, 587 P.2d 747 (1978). In *Brady*, our supreme court approved the reasoning in *McClure v. United States*, 332 F.2d 19 (9th Cir. 1964), cert. den. 380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965), in which the Ninth Circuit laid down the test to be applied to determine whether there was a refusal of admittance:

"... the circumstances were such as would convince a reasonable man that permission to enter had been refused." 332 F.2d at 22.

There is no fixed rule as to the time an officer must wait after announcing his authority and purpose before he may use force to break into a residence. Proper action depends upon the particular circumstances in each case. *State v. Bates*, supra; *United States v. Cruz*, 265 F.Supp. 15 (W.D. Tex.1967).[1]

The purposes for requiring notice before officers make forcible entry into an area are generally held to be (1) protecting both occupants and law enforcement officers by preventing violent confrontations which may occur upon unannounced intrusions, (2) protecting individuals' rights of privacy in their homes as well as preventing unexpected exposure of occupants' private activities, and (3) preventing the destruction of property resulting from forced entry. *State v. Sanchez*, 128 Ariz. 525, 627 P.2d 676 (1981).

The state does not seriously contend that the passage of five to six seconds from the time the officers announced their purpose was, under the circumstances presented here, a reasonable time from which a refusal of admittance could be implied. The trial court concluded that it was not and we do not disagree.

The state's prime contention is that the presence of exigent circumstances excused compliance with the "knock and announce"

---

1. In *McClure*, an entry four or five seconds after announcement was upheld where the police saw a woman inside and heard scuttling noises. In *United States v. Allende*, 486 F.2d 1351 (9th Cir. 1973), cert. den. 416 U.S. 958, 94 S.Ct. 1973, 40 L.Ed.2d 308 (1974), entry after 10 seconds was upheld where scampering sounds were heard. In *Cruz*, entry after 15 seconds was upheld where the parties inside were believed to be dangerous and the police heard rustling and scuffling. In *United States v. West*, 328 F.2d 16 (2nd Cir. 1964), entry after 30 seconds was upheld where movement was heard. In *United States v. Gorman*, 208 F.Supp. 747 (E.D.Mich.1962), an entry within 25 or 30 seconds after the police announced their purpose and identity was upheld in a gaming case. In *United States v. Poppitt*, 227 F.Supp. 73 (D.Del.1964), the court held that after a wait of 12 to 15 seconds, the police could reasonably infer that they had been refused admittance. The test there seems to have been the length of time necessary for the occupant reasonably to either reach the door or respond to the officers.

rule. Since its decision in *State v. Cook*, 115 Ariz. 188, 564 P.2d 877 (1977), which casts doubt on the "exigent circumstance" exception to the rule, our supreme court has recognized exceptions. See, e. g., *State v. Smith*, 123 Ariz. 231, 599 P.2d 187 (1979); *State v. Love*, 123 Ariz. 157, 598 P.2d 976 (1979); *State v. Decker*, 119 Ariz. 195, 580 P.2d 333 (1978). The state contends that because of the information provided to the officers at the pre-arrest briefing session, they could reasonably believe that a weapon was within the residence. This fact, it argues, coupled with the fact that the officers were in a dangerous position on the porch of the residence, presented exigent circumstances which excused compliance with the "knock and announce" rule.

California courts have held that non-compliance with their statutory "knock and announce" rule is excusable where there are reasonable grounds to believe that compliance would endanger the arresting officers. *Parsley v. Superior Court*, 9 Cal.3d 934, 513 P.2d 611, 109 Cal.Rptr. 563 (1973); *People v. Dumas*, 9 Cal.3d 871, 512 P.2d 1208, 109 Cal.Rptr. 304 (1973); *People v. Amos*, 70 Cal.App.3d 562, 139 Cal.Rptr. 30 (1977). In *Dumas*, the police had knowledge of specific facts which made it reasonable to believe the defendant would use deadly force against them in that they had reliable information that Dumas habitually answered the door with a firearm. In *People v. Henderson*, 58 Cal.App.3d 349, 129 Cal.Rptr. 844 (1976), defendant's arrest record included a history of assaultive behavior, including a prior altercation with a police officer because defendant was carrying a firearm. These facts, known to the officers at the time of entry, were held sufficient to bring the officers within the no-knock exception set forth in *Dumas*. On the other hand, in *People v. Bennetto*, 10 Cal.3d 695, 517 P.2d 1163, 111 Cal.Rptr. 699 (1974), the officers' non-compliance with the statutory requirements was held improper where the police had information that the defendant possessed a rifle but there were no specific facts suggesting that he was likely to use the weapon against them. The *Dumas* and *Bennetto* courts pointed out that the need for compliance with the knock-notice re-

quirements is stronger where the police have knowledge of the presence of a weapon in the house and there is nothing to suggest that the occupants have a propensity to use the weapon against them, because there is more danger of a deadly encounter if the householder is startled by an unexpected intruder. *See also, People v. Vollheim*, 87 Cal.App.3d 538, 150 Cal.Rptr. 837 (1978).

In the case at bench, the police officers had no information other than that Daniel Piller had negotiated for the purchase of a .357 magnum handgun and that there was a possibility of such a weapon being in the residence. Police knowledge of the existence of a firearm excuses compliance with announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcement, and this belief must be based on specific facts and not on broad, unsupported presumptions. *People v. Dumas*, supra. The trial court, in granting the motion to suppress, properly concluded that there were no personal observations or specific facts which indicated that an announced entry might be perilous.

The suppression order is affirmed.

HOWARD and BIRDSALL, JJ., concur.