Walter Don MAZEPINK and Janice Gail Schnitzlein *v.*
STATE of Arkansas

CR 98-330 987 S.W.2d 648

Supreme Court of Arkansas
Opinion delivered January 28, 1999

*Daily & Woods, P.L.L.C.*, by: *Barry D. Neal*, for appellants.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellants Walter Don Mazepink and Janice Gail Schnitzlein appeal the judgment of the Sebastian County Circuit Court denying their motion to suppress evidence obtained after a search of their home. Appellants argue on appeal that the trial court erred in denying their suppression motion because the officers executing the search warrant failed to knock and announce their presence in compliance with the Fourth Amendment to the United States Constitution. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(1). We find merit to Appellants' argument, and we reverse.

The record reflects that on December 20, 1996, Fort Smith Police officers obtained a search warrant for Appellants' residence. The search warrant did not contain a no-knock provision. At the time they executed the warrant, officers were aware that the house was occupied only by Appellant Schnitzlein and her adult daughter; Appellant Mazepink had been seen by surveillance officers leaving the residence shortly before the search. When the officers approached the residence, they knocked on the front door and shouted, "Police, search warrant[.]" Two or three seconds later, the officers broke open the door with a battering ram and entered the house. Once inside, officers seized approximately twelve ounces of methamphetamine and various items of drug paraphernalia.

Appellants were subsequently arrested and charged with possession of methamphetamine with intent to deliver and possession of drug paraphernalia. Appellants filed a motion to suppress the evidence seized during the search of their house on the basis that the officers' failure to comply with the "knock and announce" requirement violated their Fourth Amendment rights. The trial court found that the officers' actions were reasonable under the circumstances and thus denied the suppression motion. Both Appellants then entered conditional pleas of *nolo contendere* to the charges, pursuant to A.R.Cr.P. 24.3. Appellant Mazepink was sentenced to a total of forty years' imprisonment, with imposition of twenty years suspended. Appellant Schnitzlein was sentenced to a total of forty years' imprisonment, with imposition of ten years suspended. This appeal followed.

On appeal, Appellants do not contest that the police officers knocked on their door and announced their presence immediately prior to entering the house and conducting the search. They argue that the officers' announcement nonetheless violated Fourth Amendment standards because the interval of time between the announcement and subsequent entry was not sufficient to allow the occupants an opportunity to comply with the law and permit the officers to enter prior to the officers breaking in the door and forcing their way into the home. They contend that under the guidelines recently established by the Supreme Court in *Wilson v. Arkansas*, 514 U.S. 927 (1995), and *Richards v. Wisconsin*, 520 U.S. 385 (1997), the entry into their home was unreasonable under the Fourth Amendment.

The State initially argues that the officers complied with the guidelines set out by the Court. Alternatively, the State asserts that there were exigent circumstances that would have allowed the officers to forego the "knock and announce" requirement altogether. The State argues further that even if the officers' entry into the house was illegal, suppression of the evidence was not warranted because the officers had a valid search warrant, and the items of evidence seized would therefore have been discovered despite the illegal entry.

■ When we review a trial court's denial of a motion to suppress evidence, we make an independent determination based on the totality of the circumstances, viewing the evidence in a light most favorable to the State, and reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998); *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998). To resolve the issue presented here, we must first decide whether the officers executing the warrant complied with the "knock and announce" rules established by the Supreme Court. If we determine that the officers did not comply with those rules, we must then decide whether there were exigent circumstances that would permit them to enter Appellants' home unannounced. Lastly, if we conclude that there were not any such exigent circumstances, we must then decide the appropriate remedy for the officers' illegal conduct, specifically whether exclusion or suppression of the evidence is warranted. Before we begin an analysis of the merits, however, we must first address the issue of standing raised by the State.

### I. Mazepink's Fourth Amendment Rights

The State argues that Appellant Mazepink lacks standing to challenge the officers' method of entry into his residence because he was not present at the time the officers entered the house. The State contends that the purposes of the "knock and announce" rule are to (1) inform the occupants of the premises that it is about to be legally invaded, (2) give them an opportunity to comply with the law, and (3) avoid damage to property. *See Richards*, 520 U.S. 385. Given those purposes, the State asserts that persons not present at the time of entry cannot claim that their rights have been infringed upon by officers who do not comply with the "knock and announce" rule. The State urges us to reject traditional Fourth Amendment analysis pertaining to the defendant's legitimate expectation of privacy in the place searched and the items seized. Under the particular facts of this case, we are not persuaded by the State's argument.

■ In *Wilson*, 514 U.S. 927, the Court established that the "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." *Id.* at

929. The doctrine of standing to invoke the Fourth Amendment exclusionary rule focuses on the defendant's substantive Fourth Amendment rights. *State v. Hamzy*, 288 Ark. 561, 709 S.W.2d 397 (1986) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)). Thus, we must determine:

> whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.

*Rakas*, 439 U.S. at 140. Using this analysis, the court should not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights; his rights are violated only if the challenged conduct invaded his legitimate expectation of privacy, rather than that of a third party. *Hamzy*, 288 Ark. 561, 709 S.W.2d 397 (citing *United States v. Payner*, 447 U.S. 727 (1980); *Rakas*, 439 U.S. 128)). Thus, the pertinent inquiry here is whether Mazepink manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *See McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996).

In *Rakas*, the Court indicated that a legitimate expectation of privacy means more than a defendant's subjective expectation of not being discovered. The Court explained:

> Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. *One of the main rights attaching to property is the right to exclude others, . . . and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. . . .* No better demonstration of this proposition exists than the decision in *Alderman v. United States*, 394 U.S. 165 (1969), where the Court held that an individual's property interest in his own home was so great as to allow him to object to electronic surveillance of

conversations emanating from his home, *even though he himself was not a party to the conversations.*

439 U.S. at 144 n.12 (citations omitted) (emphasis added). This court has likewise recognized that where the defendant owns or possesses the property searched, he or she has standing to challenge the search under the Fourth Amendment. *See, e.g., Hodge v. State,* 332 Ark. 377, 965 S.W.2d 766 (1998); *Stanley v. State,* 330 Ark. 642, 956 S.W.2d 170 (1997). Here, the State does not dispute that Mazepink resided in the house that was the subject of the search. Thus, under traditional Fourth Amendment analysis, Mazepink has standing to challenge the legality of the search, which, pursuant to the Court's holding in *Wilson,* 514 U.S. 927, includes the method of entry and execution of the search.

The State relies on the holdings in *State v. Johnson,* 716 P.2d 1006 (Alaska Ct. App. 1986), and *State v. Papineau,* 705 P.2d 949 (Ariz. Ct. App. 1985). In both cases, the appellants sought to exclude evidence obtained with search warrants on the ground that the officers did not knock and announce their presence prior to entering the premises. Both courts held that the appellants, who were not present at the time the police entered the premises, lacked standing to challenge the method of entry under the Fourth Amendment. Neither case, however, involved forced entry that resulted in damage to the appellants' property; rather, officers entered through unlocked doors. In *Papineau,* 705 P.2d 949, the Arizona court explained the general purposes behind the "knock and announce" rule, underscoring the lack of destruction to the property in that case:

> "The right which knock and announce rules provide *occupants* is the right to be warned that their privacy is about to be legally invaded." *State v. Sanchez,* 128 Ariz. 525, 528, 627 P.2d 676, 679 (1981) (emphasis added). Also important are avoidance of violent confrontations attendant to unannounced entries, *prevention of destruction of property,* and preventing unexpected exposure of private activities. *State v. Sanchez,* supra; *State v. Wright,* 131 Ariz. 578, 643 P.2d 23 (App. 1982). *Entry through an unlocked door involves no destruction of property.* While those present may have felt their privacy unjustifiably invaded and while the entry may have heightened the risk of violent confrontation, only those present would have rights that would be violated.

*Id.* at 950 (emphasis added). Similarly, in *Wilson*, 514 U.S. 927, the Court explained that the common-law "knock and announce" rule "was justified in part by the belief that announcement generally would avoid 'the destruction or breaking of any house . . . by which great damage and inconvenience might ensue[.]' " *Id.* at 935-36 (quoting *Semayne's Case*, 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 196 (K. B. 1603)).

We decline to apply the ultimate holdings in *Johnson* and *Papineau* to the particular facts of the case at hand, because neither case involved the forced entry or destruction of the appellants' property resulting from the entry, and because both cases were decided prior to the Court's decision in *Wilson*, wherein noncompliance with the "knock and announce" rule was deemed part of the reasonableness inquiry under the Fourth Amendment.

■ Our analysis of this issue might have been different if there had been no occupants inside the residence at the time the police forced their entry into the home. Arguably, had no one been present at the time of entry, the officers may have had no alternative but to force entry by breaking in the door with a battering ram. Here, however, there were two persons inside the residence, and the officers were aware of this. Thus, at least one person was present to comply with the officers' request for entry so that they could execute their search warrant. It seems irrelevant under these circumstances that Mazepink was not actually present at the time of entry; his standing to seek exclusion of the evidence obtained after the search is grounded in his right to exclude others and to be free from illegal police invasion of his privacy in his residence. Furthermore, Mazepink's legitimate expectation of privacy in his residence encompasses the right to expect not only privacy for himself, but for his family and invitees, including his live-in girlfriend, Appellant Schnitzlein, and her daughter. *See Alderman v. United States*, 394 U.S. 165, 179 n.11 (1968) (holding that in cases where electronic surveillance is carried out either by means of a physical entry or by surveillance without a technical trespass, "officialdom invades an area in which the homeowner has the right to expect privacy for himself, his family, and his invitees, and the right to object to the use against him of the fruits of that invasion, not because the rights of others have been violated, but

because his own were"). We turn now to the merits of Appellants' argument concerning the validity of the officers' method of entry into their residence.

## II. Knock and Announce

As discussed previously, the Supreme Court in *Wilson*, 514 U.S. 927, recognized that under the common law of search and seizure, the reasonableness of the search of a dwelling pursuant to the Fourth Amendment may depend in part on whether law enforcement officers announced their presence and authority prior to entering. The Court held:

> Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure. Contrary to the decision below, we hold that in some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment.

> This is not to say, of course, that every entry must be preceded by an announcement. The Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests.

*Id.* at 934. The Court left it to the lower courts to determine the circumstances under which an unannounced entry would be reasonable under the Fourth Amendment.

In *Richards*, 520 U.S. 385, the Court expanded upon its holding in *Wilson*. There, the Court rejected the Wisconsin Supreme Court's blanket rule that police officers are never required to knock and announce their presence when executing a search warrant in a felony drug investigation. The Court reasoned that "[i]f a *per se* exception were allowed for each category of criminal investigation that included a considerable — albeit hypothetical — risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless." *Id.* at 394.

The Court observed that although felony drug investigations may frequently present circumstances warranting unannounced entries, that fact "cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce *in a particular case." Id.* (emphasis added). The Court then set forth the test for determining whether an unannounced entry was reasonable:

> In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard — as opposed to a probable cause requirement — strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. . . . This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.

*Id.* at 394-95 (citations omitted). The Court concluded that the foregoing test should be applied by trial courts on a case-by-case basis, to determine whether the facts and circumstances of the particular entry justified dispensing with the "knock and announce" requirement.

In the present case, Appellants do not dispute that the officers knocked on the door and announced their presence and purpose prior to forcibly entering the residence. This fact does not, however, resolve the issue in this case because the Fourth Amendment not only requires officers to go through the motions of knocking and announcing, it also requires them to wait a reasonable period of time before forcing entry into the premises. A refusal to reply to the officers' order to open the door may be inferred from silence. *United States v. Mendonsa*, 989 F.2d 366 (9th Cir. 1993). Correspondingly, if the occupants do not admit the officers within a reasonable period of time, the officers may be deemed to be constructively refused admittance and may then enter by force. *United States v. Moore*, 91 F.3d 96 (10th Cir. 1996). Thus, before officers may force entry into the premises, they must

wait long enough to have been constructively refused entry by the occupants. There is no exact measurement of time required before the officers are said to have been constructively refused entry; rather, the reasonableness of the time interval has been determined on a case-by-case basis.

In *Moore*, 91 F.3d 96, for example, where the forced entry was virtually instantaneous with the announcement, the Tenth Circuit concluded that the time interval, which was no more than three seconds, precluded any claim that the officers had been constructively refused entrance to the premises. Similarly, in *United States v. Marts*, 986 F.2d 1216 (8th Cir. 1993)[1], the Eighth Circuit concluded that a time interval of less than five seconds, absent exigent circumstances, was insufficient to comply with "knock and announce" standards. There, the court observed that the officers' reasonable belief that firearms may have been present inside the residence, standing alone, was insufficient to establish exigent circumstances. The court explained:

> This court is surely cognizant of the balancing act which law enforcement officers must undertake in the performance of their duties. In fighting the "war on drugs," officers have every reason to be fearful of hostility and even gunfire. However, a ruling which excuses action which would otherwise constitute clear misconduct, based upon the subjective fears and beliefs of officers, would emasculate the rule, reducing it to nothing more than a "knock and enter" rule.

*Id.* at 1218 (citation omitted). *See also United States v. Lucht*, 18 F.3d 541 (8th Cir.), *cert. denied*, 513 U.S. 949 (1994) (holding that a wait of three to five seconds before forcing entry was insufficient absent evidence that the officers were in danger or that evidence was being destroyed); *Mendonsa*, 989 F.2d 366 (holding that, absent exigent circumstances, a forced entry after only three to five

---

[1] Many of the federal cases, including *Marts*, have analyzed the officers' actions within the context of 18 U.S.C. § 3109, as opposed to that of the Fourth Amendment. The Supreme Court resolved any apparent conflict between the "knock and announce" requirement in § 3109 and that of the Fourth Amendment in *United States v. Ramirez*, 523 U.S. 65 (1998), holding that § 3109 was merely a codification of the common law, and that the decisions in *Wilson*, 514 U.S. 927, and *Richards*, 520 U.S. 385, serve as guideposts for analysis under either provision.

seconds of silence following the officers' announcement was not reasonable and required suppression of the evidence); *United States v. Nabors*, 901 F.2d 1351 (6th Cir.), *cert. denied*, 498 U.S. 871 (1990) (holding that instances in which officers make a forced entry seconds after announcing their presence and authority will be carefully scrutinized to determine whether there is compliance with 18 U.S.C. § 3109); *People v. Polidori*, 476 N.W.2d 482 (Mich. Ct. App. 1991), *cert. denied*, 506 U.S. 905 (1992) (holding that the time interval of six seconds between announcement and entry was insufficient to comply with Michigan's "knock and announce" statute or the Fourth Amendment); *State v. Bates*, 587 P.2d 747 (Ariz. 1978) (holding that, absent exigent circumstances, an interval of three to five seconds was insufficient to demonstrate that the officers had been constructively refused).

On the other hand, in *United States v. Markling*, 7 F.3d 1309 (7th Cir. 1993), *cert. denied*, 115 S. Ct. 1327 (1995), the Seventh Circuit held that a time interval of seven seconds between announcement and entry was sufficient under the circumstances. Specifically, the court found significant the facts that (1) there was no noise coming from the apartment that may have made it difficult for the occupant to hear the officers, (2) the room was small, and (3) two women, who had just come from the apartment after purchasing cocaine from the defendant, told the officers that the defendant would likely flush the remaining drugs down the toilet. *See also United States v. Jones*, 133 F.3d 358 (5th Cir.), *cert. denied*, 118 S. Ct. 1854 (1998) (holding that under the particular circumstances of that case, including the readily destroyable nature of drugs, fifteen to twenty seconds was sufficient time for the officers to wait before entering the premises); *United States v. Knapp*, 1 F.3d 1026 (10th Cir. 1993) (holding that constructive refusal was shown where police waited ten to twenty seconds after announcement without receiving a verbal or physical response); *United States v. Gatewood*, 60 F.3d 248 (6th Cir.), *cert. denied*, 116 S. Ct. 546 (1995) (holding that approximately ten seconds between announcement and entry was reasonable).

To summarize, the foregoing cases reveal that the determination of whether a search is reasonable under the Fourth Amendment depends in part on whether the officers' entry into a

residence was preceded by a knock on the door and an announcement of the officers' presence and purpose. Of course, not every execution of a search warrant will require a knock and announcement prior to entry. The test is whether the police have a reasonable suspicion that knocking and announcing their presence would be dangerous or futile, or that it would inhibit the officers' effective investigation of the crime, such as resulting in the destruction of evidence. Mere technical compliance with the "knock and announce" requirement is not sufficient where there is not a reasonable amount of time between the announcement and forced entry, unless exigent circumstances, including danger or harm to officers or others and the destruction of evidence, were known to the officers at the time of entry.

Here, testimony of the executing officers did not demonstrate any exigent circumstances that would justify their forcing entry into Appellants' residence after having waited only two to three seconds. Detective Wayne Barnett testified that the door to the residence was closed, as were the window shades. As soon as he knocked on the door, he yelled, "Police, search warrant[.]" A couple of seconds later, another officer hit the door with the battering ram, forcing the door open. The time that elapsed between the announcement and the strike of the battering ram was a mere two or three seconds. Barnett stated that he heard no suspicious noises coming from the residence as he approached it, and that he had no reason to believe that anyone inside the residence might be attempting to escape or destroy the evidence. He stated further that he had no reason to believe that there were guns or weapons inside the residence, or that any of the occupants had any violent or assaultive tendencies; he was aware that the only two individuals inside the residence at the time were two unarmed females. Barnett explained that, in fact, they had handled this search warrant according to standard procedure, the same way in which they handle all drug warrants.

Detective Charles Kerr supported Barnett's version of events, stating that a few seconds expired between the time the officers announced their presence and the time they forced open the door with the battering ram. Kerr also echoed Barnett's testimony that this particular search warrant was served the same way that they

normally execute search warrants. Likewise, Officer Monty McMillen, the officer who actually used the battering ram, testified that the officers yelled and announced themselves as he hit the door. McMillen indicated that just a few seconds passed between the knock on the door and the time that he forced open the door with the battering ram.

■ We conclude that under the circumstances, the time interval between the officers' announcement and their forced entry into the residence was insufficient to demonstrate that they were constructively refused entry into the house by the occupants. There were no exigent circumstances present in this case that would have permitted the officers to make such a simultaneous forced entry. Specifically, there was no indication that the occupants posed any danger to the officers, or that they had any violent tendencies. We are not persuaded by the State's assertion that syringes inside the residence posed a danger to officers upon entry. Syringes, while capable of spreading deadly diseases, would pose little, if any, danger to the officers, who entered the residence with their guns drawn. Similarly, there was no evidence that any wait by them would have been futile, as the officers had conducted surveillance on the residence and knew that there were two persons present inside.[2] Moreover, there was no evidence that in this particular case the occupants may have attempted to destroy the evidence, for example, by flushing it down the toilet. Evidence that Schnitzlein was caught by officers in the act of attempting to hide drugs under a pillow is irrelevant to our review. Such information cannot be considered in determining the reasonableness of the entry because it was not known to the officers at the time of their entry.

■ Furthermore, the fact that the confidential informant told the officers that there were drugs in the bedroom does not support the State's claim that the drugs were capable of being easily destroyed. Without the benefit of further evidence, such as the location of the bathroom in relation to the bedroom where the

---

[2] Both Barnett and Kerr indicated that Schnitzlein's daughter was located near the front door at the time they entered. Arguably, she may have been attempting to comply with the law and permit the officers to enter.

drugs were kept, any determination regarding destruction of the drugs in this case would be speculative at best. Testimony from Barnett and Kerr as to their *general experience* in serving drug search warrants, that suspects often attempt to destroy the evidence once they become aware the police are there, is not sufficient to demonstrate any exigent circumstances in this particular case. Were we to uphold the officers' actions in this case based solely on what generally has occurred in other drug searches, we would be effectively recognizing a presumption that in all drug searches the suspects will attempt to destroy evidence if the police announce their presence. Such a presumption is prohibited by the decision in *Richards*, 520 U.S. 385. Accordingly, we conclude that the officers' conduct violated the Fourth Amendment's protection from unreasonable searches and seizures. We must now determine the appropriate remedy for such violation.

### III. Application of the Exclusionary Rule

The State urges us to adopt a remedy other than suppression of the evidence pursuant to the Fourth Amendment exclusionary rule. The State asserts that because the purpose of the exclusionary rule is to deter police misconduct, it would be inappropriate to exclude the evidence in this case because the decision to act illegally (not to knock and announce before forcing entry) was not motivated by a desire to gather evidence by any means other than a search warrant issued upon probable cause. We agree with Appellants, however, that exclusion is the only practical remedy for such police misconduct.

Although the Supreme Court has not directly addressed the issue of the appropriate remedy for violations of the "knock and announce" rule within the context of the execution of a valid search warrant, various federal circuit courts and state courts have. For instance, in *Marts*, 986 F.2d 1216, the Eighth Circuit rejected the government's good-faith defense, under *United States v. Leon*, 468 U.S. 897 (1984), and held that the only appropriate remedy in that case was exclusion of the evidence. The court explained:

> The *Leon* decision does not extend to the instant case, where there is no indication that the officers' conduct was objectively

> reasonable. Rather, there was a clear violation of the knock and announce rule, without the presence of exigent circumstances. The Fourth Amendment limitations are designed to deter precisely this kind of conduct. The incentive for officers to operate within those limitations in the future is provided by our application of the exclusionary rule.

*Id.* at 1219. Similarly, in *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996), the Sixth Circuit held that "unless exigent circumstances exist, the failure of state law enforcement officials to knock and announce their presence will render the evidence procured during the ensuing execution of a warrant inadmissible." *See also Moore*, 91 F.3d 96 (affirming the district court's suppression of the evidence where police violated the "knock and announce" rule); *United States v. Becker*, 23 F.3d 1537 (9th Cir. 1994) (holding that evidence obtained during execution of a search warrant should be suppressed due to the officers' failure to knock and announce where no exigent circumstances were present); *Knapp*, 1 F.3d 1026, 1030 (holding that "[e]vidence seized must be suppressed as the fruit of an unlawful search if the officers failed to comply with the knock and announce statute") (citing *United States v. Ruminer*, 786 F.2d 381 (10th Cir. 1986)); *Polidori*, 476 N.W.2d 482, 485 (holding that "[t]here can be no dispute that evidence seized in violation of the Fourth Amendment is subject to the exclusionary rule") (citing *Mapp v. Ohio*, 367 U.S. 643 (1961)).

Furthermore, the Supreme Court has applied the exclusionary rule to suppress evidence obtained from an unlawful arrest predicated on the arresting officers' failure to comply with the "knock and announce" rule. In *Miller v. United States*, 357 U.S. 301 (1958), the Court explained that although it was mindful of society's reliance on law enforcement agencies to achieve law and order:

> [I]nsistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home

is deeply rooted in our heritage and should not be given grudging application. . . . Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house.

*Id.* at 313 (footnote omitted).

 We are persuaded by the foregoing decisions and the analysis offered by the Court in *Miller*. We thus conclude that, under the particular facts and circumstances of this case, exclusion of the evidence is the only appropriate remedy. As discussed at length above, there were no exigent circumstances present at the time the officers entered Appellants' residence that would justify their failure to knock and announce their presence before breaking in the door with a battering ram. Although there is no dispute that the search warrant here was issued upon probable cause, the executing officers nonetheless violated Appellants' Fourth Amendment rights when they forced their way into the residence without first complying with the "knock and announce" rule. The presence of an otherwise valid search warrant does not lessen the degree of the violation. In this respect, we concur with the reasoning offered by the Court in *Richards*, 520 U.S. 385, 393 n.5, that "[w]hile it is true that a no-knock entry is less intrusive than, for example, a warrantless search, the individual interests implicated by an unannounced, forcible entry should not be unduly minimized." Accordingly, we conclude that the appropriate remedy for the misconduct in this case is suppression of the evidence obtained as a result of the search.

We reject the State's argument that exclusion of the evidence is not appropriate because the evidence would have been inevitably discovered by legal means (the search warrant) despite the illegal entry. We also reject the State's argument that there was an independent source for the evidence, namely the previously procured search warrant. These same arguments were offered by the government in *Marts*, 986 F.2d 1216, and were rejected by the Eighth Circuit.

In *Marts*, the government argued that even if the officers had waited an additional period of time (longer than five seconds), the

exact same search would have been conducted and the exact same evidence would have been seized. Nonetheless, the court concluded that suppression of the evidence was mandated, stating that "[l]ongstanding constitutional principles regarding unlawful search and seizure bar the government's use of the fruits of an unlawful search simply because the officers 'would have found it anyway.'" *Id.* at 1219 (footnote omitted). The *Marts* court also rejected the theory advanced by the dissent that the evidence should be admissible under the independent-source rule. The dissenting judge relied on *Segura v. United States*, 468 U.S. 796 (1984), as does the State in this case. Although the court initially rejected application of the independent-source rule on the ground that it was not raised below, it addressed the merits of the theory:

> Under the dissent's application of the independent source rule, the knock and announce rule codified under § 3109 would be meaningless since an officer could obviate illegal entry in every instance simply by looking to the information used to obtain the warrant. Under the dissent's reasoning, officers, in executing a valid search warrant, could break in doors of private homes without sanction.

*Marts*, 986 F.2d at 1220. The court then distinguished the facts of *Segura*, where the police entered the apartment without a warrant in order to secure it until a warrant could be obtained with previously known information. Although the initial entry was invalid, the search itself, pursuant to the subsequently obtained warrant, was determined to be reasonable because it was based on an independent source that provided probable cause for issuance of the warrant. The Eighth Circuit concluded:

> The significant factor in *Segura* is that the search warrant and the evidence seized under it were totally unrelated to the illegal entry. In the present case the search warrant, *although legally obtained*, was executed in violation of § 3109, and its execution was directly connected to the illegal entry.

*Id.* (emphasis added).

We find that reasoning sound and directly applicable to the facts of this case, where the search warrant, although based on probable cause and otherwise legally obtained, was executed in

violation of the Fourth Amendment "knock and announce" rule, and its execution was directly connected to the illegal entry. We thus conclude that exclusion of the evidence is the appropriate remedy for the officers' misconduct in this case. We concur with the Eighth Circuit that were we to hold otherwise, the "knock and announce" rule would be rendered meaningless. Accordingly, we reverse the trial court's denial of Appellants' motions to suppress, and we remand the case to the trial court to vacate the Appellants' conditional pleas of *nolo contendere* pursuant to Rule 24.3(b).