Phetaphay SYAKHASONE *v.* STATE of Arkansas

CA CR 00-496 39 S.W.3d 5

Court of Appeals of Arkansas
Division II
Opinion delivered February 7, 2001

*Eddie N. Christian, Jr.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Phetaphay Syakhasone appeals a decision denying his motion to suppress evidence seized during a search of his residence on February 17, 1998. Pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure, appellant entered a conditional plea of *nolo contendre* to possession of cocaine with intent to deliver and received a sentence of forty-two months' imprisonment, with an additional one hundred thirty-eight months suspended. Appellant now argues that the Fort Smith police officers failed to adhere to the "knock and announce" rule before executing the search; that it was unreasonable for an officer to believe that the person who looked out the window identified them as law enforcement officers; and that the circumstances surrounding the search do not warrant an exception to the rule. We agree that the officers failed to abide by the knock-and-announce rule and that exigent circumstances did not exist to

warrant the officers' conduct. Therefore, we reverse the conviction and remand for further proceedings.

On February 17, 1998, the Fort Smith Police Department obtained a warrant to search the residence located at 4709 North 36th Street in Fort Smith, Arkansas, for narcotics. The residence was owned by appellant who lived there with his fiancee and infant son. The warrant was based on an affidavit provided by Detective Michael Bates of the Fort Smith Police Department who learned from a confidential informant that crack cocaine was being sold at the residence. The affidavit alleged that the informant made a controlled buy of crack cocaine under the supervision of the police. The search warrant stated that the "items are in danger of being removed from said premises or being destroyed as the items are small and are easily capable of being removed or destroyed. Also, the items are being sold and thereby removed from the residence." The search warrant did not contain a no-knock provision.

At approximately 9:55 p.m., the police executed the warrant. Five officers approached the front entrance of the residence with their guns drawn. The officers were dressed in black; four officers wore raid jackets and vests with the word "POLICE" on the front, and one officer wore a police uniform. An officer later identified as detective William Ohm carried a "battering ram," to force the door open if necessary.

As the officers approached the house, Bates noticed someone open a curtain, look in the direction of the officers, and pull the curtain back. Bates testified that based on his observation, he yelled for the other officers to hurry because he was concerned for their safety. After the officers hurriedly went to the entrance, Bates opened the screen door and told detective Ohm to hit the door. As Ohm pulled the battering ram, Bates knocked and announced "police." The door was forced open within two to five seconds.

Once inside, the officers discovered Chris Stevens, an over-night guest of appellant's, in the living room, hiding by the couch. Appellant's girlfriend was in the southwest bedroom with their child. As a result of the search, the officers confiscated several different packages of rock cocaine, a nine-millimeter gun, and several hundred dollars. Appellant was not present but was later arrested at work.

The trial court heard testimony from four of the officers during the suppression hearing. Detective Bates testified that the confidential informant did not mention weapons or that the people inside the residence were dangerous. Bates also testified that the criminal check he ran on appellant was negative and that the warrant did not authorize a search for weapons. However, both Bates and Detective Charles Kerr testified that they chose to enter the home by force out of concern that the residence contained weapons. Bates testified that his anxiety heightened when Stevens looked out the curtains because the officers did not know if there were any weapons in the house. Kerr echoed the concerns of Bates, and testified that a safety hazard always existed when officers lose the element of surprise. Kerr testified that whenever the officers in his department felt that anything had occurred during the execution of a search warrant that heightened the prospect of danger, the officers would not wait for consent prior to gaining entry. Kerr also told the court that it was typical to find guns when executing most search warrants, and that officer safety was a major concern in search executions because people may retrieve a gun. Kerr testified that Bates did not alert the officers that the person in the window had a weapon; however the officers hurried to get to the door for safety. He also testified that the area was well lit and that there were lights on in the house.

The court also heard testimony from Officer Donnie Ware, who testified that he saw someone in the window, and that five or six seconds lapsed between the time the officers announced their presence and the time the officers rammed the door. Detective Ohm, the person holding the battering ram, testified that there may have been a two to three second delay between the police announcing their presence and Ohm hitting the door.

After hearing the testimony, the trial court found that the police failed to comply with the knock and announce rule. However, it determined that exigent circumstances gave the police reasonable suspicion that an unannounced entry was warranted. The court pointed to the fact that the officers were dressed in identifiable law enforcement attire such that it was reasonable for Bates to believe that Stevens had identified them as police officers, and found that the disposable nature of crack cocaine warranted forceful entry into appellant's home. This appeal followed.

First, appellant contends that it was unreasonable for Bates to believe that Stevens identified the five men approaching the residence as law enforcement officers. Second, he argues that even if it were reasonable for Bates to believe that Stevens identified the officers, no exigent circumstances existed to warrant forceful entry into the home. The State responds that the officers complied with the knock and announce rule and, alternatively, that exigent circumstances justified forceful entry. After applying the instant circumstances to the controlling law, we hold that even if it was reasonable for Bates to believe that Stevens identified the men as law enforcement officers, the record fails to demonstrate that the officers had particular knowledge to necessitate forceful entry.

When reviewing a trial court's denial of a motion to suppress, this court makes an independent determination based on the totality of the circumstances. *See Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998). We will only reverse the trial court if its ruling is clearly against the preponderance of the evidence. *See id.*

### Knock and Announce

The Fourth Amendment protects an individual's legitimate expectation of privacy against unreasonable searches and seizures.[1] *See Wilson v. Arkansas*, 514 U.S. 927 (1995). When an appellant owns or is in possession of the property searched, he has standing to challenge the legality of the search. *See Mazepink v. State*, 336 Ark. 171, 987 S.W.2d 648 (1999).

The United States Supreme Court announced in *Wilson* that the common-law rule of knock and announce constitutes a portion of the Fourth Amendment reasonableness inquiry. The Court traced the knock and announce principle from early English common law to modern times beginning with the early rule that "when the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execu-

---

[1] The text of the Fourth Amendment is as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be search, and the persons or things to be seized.

U.S. Const. amend. IV.

tion of the K[ing]'s process, if otherwise he cannot enter," and noting that the rule was qualified by the statement that "before he breaks it, he ought to signify the cause of his coming, and to make request to open doors . . . , for the law without a default in the owner abhors the destruction or breaking of any house." *See Wilson, supra* (quoting *Semayne's Case*, 5 Co. Rep. 91a, 77 Eng. Rep. 194, 195-96 (K.B. 1603)). The Court noted that both the rule and its qualifier were accepted by many prominent founding-era commentators, including Sir Matthew Hale, William Hawkins, and Sir William Blackstone.

■ The principle later became part of early American common law when many states, in conjunction with ratification of the Fourth Amendment, enacted constitutional provisions or statutes that incorporated English common law. *See Wilson, supra.* The Court observed that knock and announce was never treated as a blanket rule and that the courts inherently recognized the application of certain circumstances that justified an exception. *See, e.g., Read v. Case*, 4 Conn. 166, 170 (1822) (holding that notice not required when spirit of rule was not violated by plaintiff's resolution to resist by physical force, if necessary); *Allen v. Martin*, 10 Wend. 300, 304 (N.Y. Sup. Ct. 1833) (holding that officer justified in not announcing in circumstance involving a prisoner's escape and retreat into prisoner's home); *People v. Maddox*, 46 Cal. 2d 301, 305-306, 294 P.2d 6, 9 (1956) (holding that knock and announce not necessary where police have reasonable belief that evidence likely to be destroyed if presence known).

Although the principle was accepted by American courts, it was not until *Wilson* that knock and announce was held to be a part of the reasonableness inquiry contemplated under the Fourth Amendment. *See Wilson, supra.* In *Wilson*, the Supreme Court reasoned that one of the reasons to require law enforcement officers to announce their presence and authority is to prevent destruction to property. *See Wilson, supra.* Therefore, it concluded that in some situations an officer's unannounced entry into a home may be unreasonable.

■ The Court again addressed the knock-and-announce principle in *Richards v. Wisconsin*, 520 U.S. 385 (1997), when it struck down a blanket rule of the Wisconsin supreme court that allowed police executing felony drug search warrants to enter

premises without knocking and announcing their presence. In rejecting the Wisconsin rule, the Court explained that "if a *per se* exception were allowed for each category of criminal investigation that included a considerable — albeit hypothetical — risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless." *See id.* at 394. The Court expanded its holding in *Wilson* and stated that police seeking to justify a "no-knock" entry must meet the following test:

> [T]he police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

*Id.* at 394 (citations omitted).

The Court chose the lower standard of reasonable suspicion rather than probable cause in order to strike a proper balance between the valid concerns of law enforcement officials who execute search warrants and the privacy interests of individuals who are affected by 'no-knock' entries. It cautioned that even though a knock and announce challenge involves a lower standard of proof, the police are required to show reasonable suspicion whenever the reasonableness of an unannounced entry is at issue. The Court held that trial courts facing the issue of whether an unannounced entry is reasonable should apply the *Richards* test to the facts and circumstances of the particular entry to determine if the entry is justifiable.

■ Our supreme court later held in *Mazepink v. State* that the requirement for police to knock and announce is not merely perfunctory. *See Mazepink*, 336 Ark. 171, 182-83, 987 S.W.2d 648, 653 (1999). Once police officers knock on the door and announce their presence and the authority for their business, the officers must wait a reasonable length of time to afford the occupant a chance to comply with their demand before the officers may enter by force. Although an exact waiting period has not been established, the *Mazepink* court held that a time interval of two to three seconds was not sufficient to establish that officers in that case were constructively denied entry into the home by the occupants.

■ Turning to this case, the trial court found that the officers did not comply with the knock and announce guidelines. Detective Bates testified that his announcement of "police, warrant," and the ramming of the door was simultaneous because he told Detective Ohm to hurry up and get to the door. He further testified that Detective Ohm's report, which indicated that the police were yelling "police, warrant," at the same time Ohm was ramming the door was probably accurate. Detective Ohm testified that he did not hit the door simultaneously as Bates was knocking, but that it could have been as few as two to three seconds after Bates yelled "police, search warrant" that he hit the door. Based on the analysis in *Mazepink*, the trial court correctly concluded that the officers failed to comply with knock-and-announce standards when they rammed their way into appellant's residence within three seconds after announcing their presence.

### Exigent Circumstances

Appellant also argues that the officers did not demonstrate exigent circumstances to justify forced entry into his home after waiting less than five seconds after they announced their presence. The State responds that the officers had an articulated and fact-based belief that evidence would be destroyed or that they would be in danger if they announced their presence.

■ *Mazepink* involved a similar fact pattern to the case at bar. In *Mazepink*, the Fort Smith police department knocked and announced their presence at appellant's home. After a two to three second interval, the police used a battering ram to force their entry into the home. The officer in charge of executing the search warrant testified that he heard no suspicious noises emerging from the residence; that he had no reason to believe anyone inside the residence might be attempting to escape or destroy evidence; and that he had no reason to believe that there were guns or weapons inside the residence or that any of the occupants had violent tendencies. In conducting its analysis, our supreme court noted that the fact that one of the occupants was caught by the police while attempting to hide drugs was not relevant; rather, what mattered in determining the reasonableness of the officers' conduct was the officers' knowledge at the time of the entry. The court further observed that the fact that the confidential informant stated that drugs were located in the home, combined with the officers' testi-

mony that in their general experience of executing search warrants suspects attempt to destroy the evidence once they are aware that the police are present, without more, was not sufficient to determine exigent circumstances.

 Appellant argues that it was unreasonable for Bates to believe that Stevens was aware of the officers' presence. He points to undisputed testimony that the warrant was executed at 9:55 p.m.; that there was no porch light on; and that the police were wearing black vests with the word "POLICE" on the front. However, the trial court determined that the testimony was clear that the officers were dressed in identifiable law enforcement attire, and two officers stated that they saw someone look out the curtain at them. Credibility issues are reserved for the finder of fact, and the trial court's conclusion that it was reasonable for the officers to believe that Stevens was aware of their presence was not clearly erroneous.

However, the testimony of the officers did not demonstrate any exigent circumstances to justify their forced entry after a two to three second wait. Although the trial court found that exigent circumstances existed to warrant forced entry because of the disposable nature of the crack cocaine, the record does not reveal that any of the officers demonstrated a reasonable suspicion that evidence was likely to be destroyed as justification for a forced entry into the home. Indeed, there is no mention of the likelihood of destruction of evidence in any of the testimony adduced at trial as the reason for the forced entry, let alone reference to facts supporting such a suspicion. The officers' testimony simply was that they entered the house by force because of their heightened concern for safety and the possibility that whoever saw them through the window might use a weapon.

Even though the officers testified they were concerned about safety, their concerns were based on their general experiences rather than anything objective surrounding appellant's case. For instance, Detective Bates testified that because Stevens had seen the officers, he was concerned that there were weapons inside the house. However, Bates admitted that his confidential informant did not mention weapons and that neither the affidavit nor the search warrant mentioned weapons. Also, the warrant did not authorize a search for weapons. Bates also testified that the confidential informant did not give him any reason to believe that anyone inside

the residence would be dangerous. Detective Kerr echoed that testimony and testified that it always became a safety hazard when "they see us coming and we don't get the element of surprise because they can go for a gun. With most of the warrants we do find guns."

█ █ Clearly, the police disregarded the knock and announce requirement because of a generalized concern rather than particularized facts connected to appellant's situation. Reasonable suspicion has consistently been defined as a suspicion based upon facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion. *See State v. Bell*, 329 Ark. 422, 948 S.W.2d 557 (1997); *Hammonds v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997). Allowing the police to force their entry of private dwellings based on anything less than reasonable suspicion would make the Fourth Amendment protection from unreasonable searches turn on unsubstantiated anxieties, baseless suspicions, and even stereotypes and prejudice. As the Supreme Court stated in *Richards v. Wisconsin, supra*, "if a *per se* exception were allowed for each category of criminal investigation that included a considerable — albeit hypothetical — risk of danger to officers or destruction of evidence, the knock and announce element of the Fourth Amendment's reasonableness requirement would be meaningless."

Reversed and remanded.

ROAF, J., agrees.

PITTMAN, J., concurs.