Christopher HAYNES *v.* STATE of Arkansas

CA CR 03-50                     128 S.W.3d 33

Court of Appeals of Arkansas
Division III
Opinion delivered November 5, 2003

*Gary D. McDonald*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellant, Christopher Haynes, entered guilty pleas to three drug-related charges in the Ashley County Circuit Court. In one of those cases, Haynes was charged with possession of cocaine with intent to deliver, and he entered a conditional plea of guilty pursuant to Rule 24.3(b) of the

Arkansas Rules of Criminal Procedure. On appeal, he contends that the trial court erred in denying his motion to suppress evidence seized pursuant to a "knock-and-announce" execution of a search warrant. We affirm the trial court.

The evidence in this case was obtained when officers executed a search warrant at appellant's residence and premises on May 17, 2002, at approximately 5:58 p.m. The search warrant authorized the property to be seized as "controlled substances, such as but not limited to, cocaine, marijuana, crack cocaine . . . Any proceeds from the sale of illegal narcotics, drug paraphernalia . . . records, ledgers, . . . associated with the sale of illegal narcotics . . . stolen property used to trade for illegal narcotics, and weapons." Upon execution of the search warrant, over $22,000 in cash was found in appellant's house, along with two bags of crack cocaine, two sets of scales, ziplock bags, a razor blade, and a syringe, among other things.

Appellant moved to suppress the evidence found upon the execution of the search warrant; after a hearing on the motion, it was denied. On appeal, appellant makes four arguments with regard to the search warrant and its execution. Specifically, he argues that the officers failed to adhere to the "knock-and-announce" requirement prior to executing the search warrant, and he argues that the affidavit for the search warrant was fatally defective because it did not contain facts that demonstrated reasonable cause to believe that controlled substances would be found on appellant's premises at the time the search warrant was issued; it did not set forth facts bearing on the informants' reliability or disclosing the means by which hearsay information was obtained; and it did not establish with certainty the time prior to the search during which the alleged contraband was on the premises to be searched.

█  When reviewing a trial court's denial of a motion to suppress, the appellate court conducts "a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court." *Saulsberry v. State*, 81 Ark. App. 419, 423, 102 S.W.3d 907, 910 (2003) (citing *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003)).

■ Appellant first argues that the officers failed to comply with the Fourth Amendment's "knock-and-announce" requirement when they executed the search warrant. In *Mazepink v. State*, 336 Ark. 171, 987 S.W.2d 648 (1999), our supreme court stated:

> The Fourth Amendment not only requires officers to go through the motions of knocking and announcing, it also requires them to wait a reasonable period of time before forcing entry into the premises. A refusal to reply to the officers' order to open the door may be inferred from silence. Correspondingly, if the occupants do not admit the officers within a reasonable period of time, the officers may be deemed to be constructively refused admittance and may then enter by force. Thus, before officers may force entry into the premises, they must wait long enough to have been constructively refused entry by the occupants. There is no exact measurement of time required before the officers are said to have been constructively refused entry; rather, the reasonableness of the time interval has been determined on a case-by-case basis.

336 Ark. at 182-83, 987 S.W.2d at 653 (citations omitted).

In the present case, the residence to be searched was described in the affidavit for search warrant as a wood-framed single-family dwelling. At the suppression hearing, there was conflicting evidence presented with regard to whether the officers knocked and announced their presence prior to entering the residence. Officer Chuck Moore of the Ashley County Sheriff's Department testified on direct examination that he participated in the execution of the search warrant at appellant's residence. He said that he and Officer Linder went to the front door, and Officer Martin and a "couple of other guys" went to the side door. He said that he went to the front porch and knocked on the door, and he could hear people moving around. He then said that after about fifteen or twenty seconds, he knocked and announced, "Police, search warrant," and then kicked the door open. Moore then stated that he knocked right after he got to the door and was yelling, "Police, search warrant, sheriff's office"; that he could hear people moving around inside the house; that he waited about fifteen or twenty seconds; and that they then entered the house. On cross-examination, Moore explained that it took fifteen or twenty seconds for the officers to come together in a group. He again reiterated that he went to the door, knocked on the door hard, and identified himself as an officer with a search warrant. He

denied that he was kicking on the door at that time. He also denied previously telling defense counsel that all he had said was "this is the sheriff's department" and started kicking the door after two or three seconds. He again stated that he had waited for approximately fifteen or twenty seconds before he entered appellant's house.

Officer James Martin of the Ashley County Sheriff's Department testified that he also participated in the execution of the search warrant on appellant's house. He said that he was assigned to the side door of the house, and that on his way to the side door, he encountered a woman in the yard who asked what was going on, and he stopped and advised her that a search was being conducted. When he arrived at the side door, he heard other officers yelling and identifying themselves from a different door. Martin testified that he knocked, yelled, and waited, and then he heard a crash that he believed to be the front door being broken down. At that time, Martin kicked the side door down and entered the house. Martin stated that about ten to fifteen seconds elapsed between knocking on the door and forcing the door open; however, he said that he believed that the front door had already been breached by that time.

Joyce Burns, appellant's mother, testified that two men pulled into appellant's yard, went up to the door, jerked the screen door open, and the white man started kicking the door open. She said that they did not knock, and she did not hear them announce themselves. She said that she did not talk to either of the men when they first arrived, and she did not see anyone go to the side door. Barbara Perez, appellant's neighbor and his mother's friend, testified that two men, one black and one white, pulled up, jumped out, and ran toward the house to the front door. She said that the men ran up on the porch, opened the screen door, and the black man started kicking the door in. She said that she did not see either of the men knock on the door.

■ On appeal, appellant argues that Officer Moore's testimony at the suppression hearing was inconsistent, and that the testimony of his mother and his neighbor was clear and to the point. However, credibility determinations and conflicts in testimony are for the trial court to resolve. *Jones v. State*, 344 Ark. 682, 42 S.W.3d 536 (2001). In this case, the trial court clearly believed Officer Moore's version of the events over that of appellant's mother and neighbor.

In *United States v. Jones*, 133 F.3d 358 (5th Cir. 1998), the Fifth Circuit Court of Appeals, while declining to formulate a "bright-line" rule, held that under the facts of that case, fifteen to twenty seconds was a long enough period of time for officers to wait between knocking and announcing their presence and entering the residence to be searched.[1] "In drug cases, where drug traffickers may so easily and quickly destroy the evidence of their illegal enterprise by simply flushing it down the drain, 15 to 20 seconds is certainly long enough for officers to wait before assuming the worst and making a forced entry." 133 F.3d at 362. Although in *Jones* it was undisputed that the officers knocked on the door, announced that they were police officers, and waited for fifteen to twenty seconds prior to entering the residence, we still find this case instructive in the case at bar in light of the trial court's resolution of the conflicting testimony in favor of the officers' testimony at the suppression hearing that they waited for fifteen to twenty seconds after knocking and announcing before they entered appellant's house. Under the facts of this case, we find no error on this point.

Appellant's remaining three points concern the affidavit by Officer James Martin in support of the application for a search warrant. Appellant contends that the affidavit for the search warrant was fatally defective because (1) it did not contain facts to establish reasonable cause to believe that controlled substances would be found at his residence at the time the search warrant was issued, (2) it did not set forth facts bearing on the informants' reliability and did not disclose the means by which the hearsay information was obtained, and (3) it did not establish with certainty the time during which the alleged contraband existed on the premises to be searched. Rule 13.1(b) of the Arkansas Rules of Criminal Procedure provides:

---

[1] There are no Arkansas cases analyzing circumstances under which a fifteen-to-twenty-second wait is sufficient with regard to officers knocking and announcing their presence when executing a search warrant. However, two Arkansas cases have determined that a two to three-second wait is insufficient under the circumstances presented in those cases. *See Mazepink v. State*, 336 Ark. 171, 987 S.W.2d 648 (1999) (holding that mere technical compliance with the "knock and announce" requirement, absent demonstrated exigent circumstances, was not sufficient); *Syakhasone v. State*, 72 Ark. App. 385, 39 S.W.3d 5 (2001) (holding that a waiting period of two to three seconds was not sufficient to establish that officers were constructively denied entry into the home by the occupants).

(b) The application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

The affidavit for search warrant, prepared by Officer James Martin, stated:

Chris Haynes has been under investigation for several weeks for the illegal sale of narcotics. I have had confidential informants and undercover officers gathering information on Haynes. On three occasions cocaine was purchased. The first buy was made by a confidential informant out of the residence for 2 ounce of crack cocaine. The second buy was made by a professional informant that has been working as an informant for several years and has testified in many cases for agencies and is reliable. The informant made contact with Haynes and talked to him about the purchase of cocaine and Haynes told the informant to come back the next day. The next day the informant went back to the residence of Haynes at 303 North Arkansas and made contact with Haynes. Haynes told the informant to make a block and come back. The informant left and drove around the block and came back. DeJuan Simpson was sitting on the front porch and when the informant pulled up DeJuan went to the car and asked to see the money and the informant gave Simpson the money and Simpson gave the informant 2 ounce crack cocaine. Both controlled buys were made within the last month. Also Mr. Haynes made the statement that he had plenty of dope to an undercover officer on 5-13-02 on the phone. Also 5-11-02

C.I.S.O. 004 was at Mr. Haynes' home at 303 Arkansas Street and saw drugs being sold from the house. C.I. 004 has been proven reliable in the past.

First, appellant argues that the affidavit for the search warrant was defective because it failed to provide a nexus between the illegal activity and the place to be searched. He contends that the affidavit fails to allege any facts to show that contraband existed at his residence at the time the warrant was being issued or that established reasonable cause to believe that contraband would be found on the premises.

In support of this contention, appellant cites *Yancey v. State*, 345 Ark. 103, 44 S.W.3d 315 (2001). In *Yancey*, the supreme court held that the affidavit did not establish reasonable cause for a search warrant to be issued to search appellants' homes after they were seen watering marijuana plants in the woods several miles away from their homes and those plants were later removed by the police. In that case, there were no facts presented in the affidavit for the search warrant to infer that either of appellants' homes were involved in criminal activity. The supreme court held, "At best, the circumstantial evidence here infers that appellants are drug dealers. To then allow an inference that they likely have contraband or evidence of a crime in their homes is to base an inference upon an inference, which is also known as mere suspicion or speculation." *Yancey*, 345 Ark. at 115, 44 S.W.3d at 322.

Appellant's case is factually distinguishable from the facts in *Yancey*. In the case at bar, the information contained in the affidavit concerned illegal drug activity that allegedly occurred *at appellant's residence*; therefore, there is no speculation as to whether appellant's house was a place where criminal activity occurred, unlike the facts of *Yancey*. We hold that the affidavit contained a sufficient nexus between appellant's illegal activity and his residence.

Appellant next argues that the affidavit for the search warrant was fatally defective because it failed to establish the reliability of its informants. We cannot agree. The affidavit referred to three different confidential informants and an undercover officer, who was identified at the suppression hearing as Officer Moore. An affidavit does not have to contain facts establishing the veracity and reliability of nonconfidential informants such as police officers. *State v. Rufus*, 338 Ark. 305, 993 S.W.2d 490

(1999). *See also Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996). Therefore, the State was not required to establish the veracity and reliability of the undercover officer to whom appellant made the comment during their phone conversation on May 13, 2002, that he had plenty of dope.

■ With regard to the other informants referred to in the affidavit, it is true that a conclusory statement that an informant is reliable is not sufficient to satisfy the requirement of indicia of reliability. *Abshure v. State*, 79 Ark. App. 317, 87 S.W.3d 822 (2002). However, failure to establish the bases of knowledge of confidential informants is not fatal "if the affidavit viewed as a whole provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in particular places." *Langford v. State*, 332 Ark. 54, 61, 962 S.W.2d 358, 362 (1998) (quoting *Heard v. State*, 316 Ark. 731, 736-37, 876 S.W.2d 231, 234 (1994)); *see also* Ark. R. Crim. P. 13.1 (2003).

■ In the present case, Officer Martin stated in his affidavit that one of the informants was a professional informant who "has testified in many cases for agencies and is reliable." Furthermore, both of the purchases by confidential informants were controlled buys. We conclude that the affidavit as a whole provides a substantial basis for a finding of reasonable cause to believe that drugs would be found at appellant's residence.

■ ■ Appellant's last point of appeal, that the affidavit was fatally defective because it did not establish the time during which the contraband existed at his residence, is also without merit. By appellant's own admission, the affidavit contains three references to time — Officer Martin stated that both of the controlled buys discussed in the affidavit were made within the last month; the telephone conversation between appellant and the undercover officer, later revealed to be Officer Moore, in which appellant stated that he had "plenty of dope" occurred on May 13, 2002; and on May 11, 2002, a confidential informant was at appellant's residence and witnessed drugs being sold from the house. Nevertheless, appellant argues that the affidavit was defective because it failed to establish with certainty that contraband existed at his residence at the time of the request for the warrant. The time of the alleged criminal activity is critical because it must support the reasonable probability that criminal activity is "likely"

being carried on at the time of the issuance of the warrant. *Heaslet v. State*, 77 Ark. App. 333, 74 S.W.3d 242 (2002). There is no requirement that officers prove that criminal activity is for a fact being carried on at the time the search warrant is issued, only that it is likely that criminal activity is occurring. Based on the information contained in the affidavit, we hold that there was no error in concluding that it was likely that criminal activity was occurring at appellant's residence at the time the search warrant was issued.

Affirmed.

NEAL and ROAF, JJ., agree.